**UNITED STATES**

v.

**William T. SMITH, Jr. and Alan R. Stoneman.**

**Appeal of John DOE.**

**Nos. 85–5367, 85–5368.**

United States Court of Appeals, Third Circuit.

Argued Jan. 7, 1986.
Decided March 28, 1986.

Robert N. de Luca (argued), Michael L. Krancer, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for appellant.

James J. West, U.S. Atty., Scranton, Pa., David C. Shipman (argued), Asst. U.S. Atty., Harrisburg, Pa., for appellee.

Samuel E. Klein (argued), Katherine Hatton, Kohn, Savett, Marion & Graf, P.C., Philadelphia, Pa., for appellee, Philadelphia Newspapers, Inc.

Before ADAMS, SLOVITER and MANS-MANN, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

### BACKGROUND

Appellant John Doe, a defense witness in the federal criminal trial of William T. Smith and Alan R. Stoneman on charges arising out of the bribery of a high Pennsylvania official, appeals in an effort to prevent disclosure of the transcript of a sidebar conference containing a question to him that was proffered by the prosecution. The United States Attorney sought to impeach Doe during his cross-examination by asking him whether he had been notified that he is a target of the same criminal investigation. App. at 7. The government represented that Doe had received such a target letter, and that is not disputed. Both defendants objected to the question. The district judge stated:

> THE COURT: I don't see what it proves, frankly. I do not see what it proves, so I'm going to sustain the objection of the defense.

App. at 8.

Later that day, the defendants requested in a second sidebar conference that the transcript of the first sidebar conference be sealed, and the court so ordered. App. at 9–10. This was followed by a third sidebar conference to discuss further the mechanics of the sealing order and notification of the media. App. at 11–14.

The following morning the district judge held an in chambers conference. He told counsel he was reconsidering the oral sealing orders entered the preceding day. After giving all parties the opportunity to be heard, the court entered a written order vacating the order sealing the transcripts. App. at 119–120. The court entered another order releasing the transcripts, which it stayed for 10 days to allow interested parties to appeal. Defendants Smith and Stoneman and the witness Doe each filed

# 113

Notices of Appeal. Smith and Stoneman, who were later convicted in the criminal case, withdrew their appeals from this order. On Doe's motion, the stay was extended by this court.

█ Doe's appeal is properly before us. An order denying access to portions of a trial record is appealable as a final order pursuant to 28 U.S.C. § 1291. *See United States v. Criden*, 648 F.2d 814 (3d Cir.1981) (hereafter *Criden I*). A fortiori, an order granting such access is similarly appealable.

## II.

### SCOPE OF REVIEW

The United States, as appellee, and appellee Philadelphia Newspapers, Inc. (PNI) argue that the district court properly exercised its discretion when it ordered the unsealing of the transcripts of the bench conferences. Doe argues that in *Criden I* and *United States v. Martin*, 746 F.2d 964 (3d Cir.1984), we held that we have plenary review over a trial court's decision regarding disclosure and access. This mischaracterizes these decisions. In *Criden I*, the first of the line of cases considering access to court material, we developed an analytical framework for the scope of review of discretionary rulings. We reserved the highest degree of insulation from review for those decisions of the district court that are "based on first hand observations" or the district court's own "observation or familiarity with the course of the litigation." *Criden I*, 648 F.2d at 817–19. In contrast, a district court's decision to give access to judicial records pursuant to the common law right to inspect and copy judicial records is less dependent on the trial court's familiarity with the proceedings, and hence deserves less deferential review, although it is still denominated a discretionary decision. *See, e.g., United States v.*

*Criden*, 681 F.2d 919, 921 (3d Cir.1982) (hereafter *Criden III*). In such a situation, in evaluating the trial court's exercise of discretion, we "must consider the relevance and weight of the factors considered." *Criden I*, 648 F.2d at 818, quoted in *United States v. Martin*, 746 F.2d at 967. Of course, our review of the legal principles applied by the district court is always plenary.[1]

## III.

### DISCUSSION

The absence of direct precedent on access of the public and the press to transcripts of sidebar and chambers conferences is somewhat surprising. Nonetheless, we find guidance in the legal principles that have evolved in connection with access to trials, pretrial proceedings, and trial materials.

Foremost is the general principle of openness of criminal trials founded in the First Amendment. As the Supreme Court explained in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), the First Amendment right of the public to attend criminal trials serves to marshal support for the administration of justice by inducing public acceptance of both the process and its results. *Id.* at 571–72, 575, 100 S.Ct. at 2824–25, 2826 (plurality opinion). The conduct of a criminal trial "is pre-eminently a matter of public interest" because its contemporaneous review by the public " 'is an effective restraint on possible abuse of judicial power.' " *Id.* at 596, 100 S.Ct. at 2838 (Brennan, J., concurring in the judgment) (quoting *In re Oliver*, 333 U.S. 257, 270, 68 S.Ct. 499, 506, 92 L.Ed.2d 682 (1948)). As the Court remarked thereafter, "the institutional value of the open criminal trial is recognized in both logic and experience."

---

1. Because we decide this case on the narrower ground of the common law right to inspect records rather than the closely related First Amendment right of access to judicial proceedings, we need not elaborate on the standard of review to be applied in constitutional access cases. In the First Amendment context, reviewing courts have a special obligation that in certain circumstances may require independent review of even factual findings. *See Bose Corp. v. Consumers Union*, 466 U.S. 485, 104 S.Ct. 80 L.Ed.2d 502 (1984).

*Globe Newspaper Co. v. Superior Court for the County of Norfolk,* 457 U.S. 596, 606, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982). The breadth of the right of access was reiterated when the Court extended it to the *voir dire* examination of potential jurors for criminal trials. *Press-Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984).

In *United States v. Criden,* 675 F.2d 550, 556 (3d Cir.1982) (hereafter *Criden II*), we identified the following six societal interests in open court proceedings that the *Richmond Newspapers* Court had found: promotion of informed discussion of governmental affairs by providing the public with the more complete understanding of the judicial system; promotion of the public perception of fairness which can be achieved only by permitting full public view of the proceedings; providing a significant community therapeutic value as an outlet for community concern, hostility and emotion; serving as a check on corrupt practices by exposing the judicial process to public scrutiny; enhancement of the performance of all involved; and discouragement of perjury. These considerations led this court in *Criden II* to hold that there was a First Amendment right of access to pretrial suppression, due process, and entrapment hearings. *Id.* at 557.

The same considerations would ordinarily apply to evidentiary rulings that could affect the course of the trial. There are, however, countervailing considerations that may militate against contemporaneous access, most notably concern that evidence that the court has ruled inadmissible should not find its way to the jury's attention. In most circumstances, it would be sufficient to make the ruling in open court but outside the presence of the jury. In other circumstances, it may be more efficient for counsel and the trial judge to speak at sidebar or in chambers than for the jury to be removed from the courtroom when questionable evidence is at issue.

Barring the press and the public from these conferences may help ensure the fairness of the trial itself.

PNI does not contend that there is a constitutional or common law right of contemporaneous presence. Brief of PNI at 10. It is conceded that the public does not have the "right to intrude uninvited into conferences at the bench and in chambers." *Rovinsky v. McKaskle,* 722 F.2d 197, 201 (5th Cir.1984). As Justice Brennan noted in his separate opinion in *Richmond Newspapers, Inc. v. Virginia,* "the trial judge is not required to allow public or press intrusion upon the huddle" of a bench interchange, nor are judges restricted in their ability to conduct conferences in chambers distinct from trial proceedings. 448 U.S. at 598 n. 23, 100 S.Ct. at 2839 n. 23.

■ Although the public and press may be justifiably excluded from sidebar and chambers conferences even when substantive rulings are made, the public interest in the ruling is not diminished. At some stage, and we need not in this case decide precisely when, that ruling must be available for public review so that the purposes of open trials can be satisfied. This can readily be effectuated because preservation of a correct and authentic record is mandated by 28 U.S.C. § 753, which requires that a court reporter record all proceedings in criminal cases had in open court. That statute patently applies as well to evidentiary rulings made at sidebar, *see Edwards v. United States,* 374 F.2d 24, 26 (10th Cir.1966), *cert. denied,* 389 U.S. 850, 88 S.Ct. 48, 19 L.Ed.2d 120 (1967), because the statutory purpose would be defeated were there no possibility of appellate review.

■ A sidebar conference at which a question to a witness was proffered and an objection sustained is an integral part of a criminal trial. Thus, if there has been no contemporaneous observation, the public interest in observation and comment must be effectuated in the next best possible manner. This is through the common law

right of access to judicial records. By inspection of such transcripts, the public, usually through the press, can monitor, observe, and comment upon the activities of the judge and of the judicial process. We hold, therefore, that the common law right of access to judicial records enunciated in *Criden I* is fully applicable to transcripts of sidebar or chambers conferences in criminal cases at which evidentiary or other substantive rulings have been made.[2]

The right of access to criminal trials, based as it is on the First Amendment, may be denied only when there is a showing of a compelling governmental interest. *See Globe Newspaper Co. v. Superior Court*, 457 U.S. at 606–07, 102 S.Ct. at 2619–20. In *Criden I*, we described the presumption of access under the common law right as a strong presumption, which can be overcome only when the party seeking closure demonstrates that the factors opposing access outweigh those favoring it. 648 F.2d at 823–829. *See also Martin*, 746 F.2d at 967–68. Doe did not make such a showing.

Doe argues that the fact that he received a target letter was information subject to grand jury secrecy under Rule 6(e) of the Federal Rules of Criminal Procedure. The government points out, however, that the term "grand jury" was not used in the proffered question. Rule 6(e) protects "matters occurring before the grand jury." This includes "only the essence of what takes place in the jury room, in order to preserve the freedom and integrity of the deliberative process." *In re Grand Jury Investigation*, 630 F.2d 996, 1001 (3d Cir. 1980).

On the record before us, we have no basis to assume that a "target letter" emanates from the grand jury. Instead, it appears to be an expression of the opinion of the United States Attorney, based on his or her knowledge of the status of the criminal investigation which may include infor-

mation based on grand jury proceedings. We agree with the Fifth Circuit that a statement of opinion by a Justice Department attorney as to an individual's potential criminal liability does not violate the dictates of Rule 6(e) "even though the opinion might be based on knowledge of the grand jury proceedings, provided, of course, the statement does not reveal the grand jury information on which it is based." *In re Grand Jury Investigation*, 610 F.2d 202, 217 (5th Cir.1980). In this case, the question, if allowed, would not have violated Rule 6(e). *See also In re Grand Jury Matter (Catania)*, 682 F.2d 61, 64 n. 4 (3rd Cir.1982) (draft indictment that may have been based on knowledge of the grand jury proceeding did not reveal any grand jury information and therefore falls outside Rule 6(e)).

Doe also contends that because the district court "apparently" found the question inadmissible "because it was unreliable and/or because it was unduly prejudicial," Appellant's brief at 17, its sealing was appropriate because "the danger of broad dissemination may substantially outweigh any benefits." (citing *United States v. Martin*, 746 F.2d at 969). The underlying premise of Doe's argument is faulty. The district court sustained defendants' objection to the government's question on relevancy grounds, not because the question lacked reliability or would cause prejudice. Moreover, as we stated in *Martin*, the fact that the evidence was held or may later be held inadmissible is not a dispositive consideration. *Id.*

Furthermore, here the question was proffered for a legitimate purpose, not an improper purpose, such as to "gratify private spite or promote public scandal." *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978). The government could have legitimately believed that Doe's possi-

---

2. We express no opinion regarding access to transcripts of sidebar and chambers conferences at which no evidentiary or similar ruling was made, because the issue is not presented in this case.

ble involvement as a target created a bias that should have been brought to the attention of the jury.

Finally, Doe claims that disclosure that he received a target letter would expose him to "unwarranted public humiliation and degradation, would be unseemly and shameless, and would constitute an unconscionable invasion of privacy." Appellant's Brief at 20–21. In appropriate cases, access to judicial records may be denied to prevent the infliction of "unnecessary and intensified pain on third parties who the court reasonably finds are entitled to such protection." *See Criden I*, 648 F.2d at 829; *see also In Re Application of KSTP Television*, 504 F.Supp. 360 (D.Minn.1980) (withholding tapes taken of victim by alleged kidnapper and rapist).

Doe is not in such a position. As a high official in the state's Republican Party, he is a public person and subject to public scrutiny. Moreover, his possible connection with the matter at issue in the trial has already been made public since he testified as a witness. Thus, his privacy interests are substantially diminished. *See Globe Newspaper*, 457 U.S. at 608, 102 S.Ct. at 2621 ("names of the minor victims were already in the public record") *Criden III*, 681 F.2d at 922 (distinguishing between "mere embarrassment" and "intensified pain"). It is doubtful that disclosure of the "target letter" information would cause the type of "intensified pain" contemplated in *Criden III*.

For these reasons, our recent decision denying the press access to a sealed list of unindicted coconspirators contained in a bill of particulars from the same criminal trial does not govern the decision in this case. *See United States v. Smith*, 776 F.2d 1104 (3d Cir.1985). We cautioned in that case that where the United States Attorney's opinion expressed in the bill of particulars "was formed on the basis of an investiga-

tion that had not yet reached the point where he was willing to make a decision on whether to prosecute, it becomes apparent that the risk of serious injury to innocent third parties is a grave one." *Id.* at 1113. We concluded that "the risk of serious injury to third parties from disclosure outweighs the interest of the public in access to this limited segment of the bill of particulars." *Id.* at 1105.

As we noted above, this case does not present the same risk of serious injury, nor does the slight risk of embarrassment from disclosure outweigh the compelling policies in favor of access to a transcript regarding an evidentiary ruling made in the course of a criminal trial.[3]

## IV.

■ In summary, we hold that the common law right of access to judicial records is fully applicable to transcripts of sidebar or chambers conferences during criminal trials at which evidentiary or other substantive rulings have been made, and that the district court did not err in ruling that the transcript of the sidebar conference should be disclosed because Doe did not demonstrate that the factors opposing access outweigh those favoring it. For the foregoing reasons, the order of the district court will be affirmed. We will also direct the Clerk of this court to unseal the briefs and appendix in this appeal forthwith.

---

**3.** Parenthetically, the district court judge who ruled that there should be no disclosure of the list of coconspirators is, of course, the same district court judge who ruled the transcript at issue in this appeal should be unsealed.