**In the Matter of 2 SEALED SEARCH WARRANTS.**

**810 Wilson Road, Wilmington, DE.**

**837 N. DuPont Street, Wilmington, DE.**

**C.A. No. 97M–10–032–NAB.**

Superior Court of Delaware,
New Castle County.

Submitted: Oct. 24, 1997.
Decided: Nov. 12, 1997.

---

**22.** *Lolly,* 611 A.2d at 961.

Scott J. Stein, Deputy Attorney General, Wilmington, for the State.

Richard G. Elliott, Jr. and John T. Dorsey (argued), Richards, Layton & Finger, Wilmington, for The News Journal Company.

## OPINION

BARRON, Judge.

This is the Court's decision regarding the New Journal's motion to unseal two search warrants and their supporting documentation. For the reasons set forth below, the motion to unseal must be denied.

## I. BACKGROUND AND POSTURE

On September 28, 1997, at approximately 5:30 a.m., a home located at 810 Wilson Road in Wilmington, Delaware, exploded, demolishing the home in its entirety. The explosion killed Louis Riccio, who had been hired by the homeowners, Salvatore and Rose Vassallo, to take care of their property while they vacationed in Sicily. The blast also damaged 15 neighboring homes.

On September 30, 1997, this Court signed a search warrant for the Wilson Road location. On October 1, 1997, the Court signed a search warrant for Riccio's home, which is located at 837 North DuPont Street, Wilmington, Delaware. On October 15, 1997, the search warrants were returned, and the State filed a motion to seal the warrants, the affidavits of probable cause, and the returns for a period of 90 days. After reviewing the documents, this Court granted the State's motion to seal.

On October 16, 1997, The News Journal Company (hereafter referred to as "Intervenor" or "News Journal") filed a motion to intervene, a motion to expedite proceedings, and a motion to unseal the documents connected with the searches of the two homes. Because no rule or statute precludes such intervention, and, in fact, Delaware courts have generally allowed it, this Court granted the motion to intervene and the motion to expedite the proceedings. *See Gannett Co., Inc. v. State,* Del.Supr., 565 A.2d 895, 899 (1989) *("Gannett I"); Van Arsdall v. State,* Del.Supr., 486 A.2d 1 (1984); *State v. Shipley,* Del.Super., 497 A.2d 1052 (1985). The State filed its memorandum opposing the motion to unseal on October 23, 1997. On October 24, 1997, the Court heard oral argument on the motion to unseal. The issues are now ripe for decision.

## II. ISSUES

The News Journal argues first that it has a "presumed right of access" to pre-indictment search warrants and supporting documentation under both the First Amendment and the common law and that the result of the analysis is the same under either standard. (Intervenor's Memorandum at 10, hereafter referred to as "Int. Mem. at *page no.*"). The State responds that every court that has addressed this issue has denied the press access to sealed pre-indictment search warrant documentation. (State's Memorandum at 1, hereafter referred to as "St. Mem. at *page no.*").

Second, the News Journal contends that even if the Court finds no First Amendment or common law right of access to the search

warrant documentation, the Court should excise sensitive portions of the documentation and release a redacted version. (Int. Mem. at 6.)

Finally, the News Journal argues that before a court may issue an order depriving the public of its First Amendment rights, the court must give notice of the proposed order and allow interested parties to be heard so that they may challenge the order. (Int. Mem. at 7.) The Court addresses these issues *seriatim*.[1]

## III. DISCUSSION

■ The question of whether the press and the public have a right of access to pre-indictment search warrants and supporting documentation has not been addressed by Delaware courts. However, it has been the practice of Delaware courts to seal documents when the circumstances so dictate. *See, e.g., State v. Pennell,* Del.Super., 583 A.2d 1348, 1349 (1990) (noting in passing that the sealed warrants had been, with a limited exception, opened following defendant's indictment). While the General Assembly has not authorized the sealing of search war-

rants, several Superior Court rules show that while search warrants are generally open, the Court in its discretion may enter an order to seal under certain circumstances. Super.Ct.Crim.R. 41(g) requires that the warrant and its supporting documentation be filed with the prothonotary but makes no provision for sealing warrants.[2] However, Super.Ct.Civ.R. 5[3] (incorporated into the Criminal Rules by Super.Ct.Crim.R. 57(d))[4] provides that court records shall not be placed under seal unless the party seeking the seal shows good cause and the Court enters an order to this effect. Also pertinent is Super.Ct.Adm.Dir. 96–1, which provides that records closed to the public by court order shall not be disclosed except when authorized by a judge and that unreturned search warrants and documentation shall not be disclosed until the warrants are returned.[5]

Read together, the rules and the Administrative Directive reflect the Court's collective perception that search warrants and their documentation are typically open to the public but that the Court may order them sealed upon a showing of good cause. The question before the Court is whether its discretionary

---

1. The State disdained to respond to Intervenor's second and third contentions.

2. Super.Ct.Crim.R. 41(g) provides as follows:

 *Return and filing of papers.* The committing magistrate or judge before whom the warrant is returned shall attach to the warrant a copy of the return, inventory and all other papers in connection therewith. The committing magistrate shall file them with the clerk of the committing magistrate's court and the judge shall file them with the prothonotary.

3. In pertinent part, Super.Ct.Civ.R. 5(g) provides as follows:

 (2) Court Records or portions thereof shall not be placed under seal unless and except to the extent that the person seeking the sealing thereof shall have first obtained, for good cause shown, an order of this Court specifying those Court Records, categories of Court Records, or portions thereof which shall be placed under seal; provided, however, the Court may, in its discretion, receive and review any document *in camera* without public disclosure thereof and, in connection with any such review, may determine whether good cause exists for the sealing of such documents; and provided further that, unless the Court orders otherwise, the parties shall file within 30 days redacted public versions of any Court Record

where only a portion thereof is to be placed under seal.

4. In pertinent part, Super.Ct.Crim.R. 57 provides as follows:

 (d) **Procedure not provided.** In all cases not provided for by rule or administrative order, the court shall regulate its practice in accordance with the applicable Superior Court civil rule or in any lawful manner not inconsistent with these rules or the rules of the Supreme Court.

5. The pertinent sections of Adm.Dir. 96–1 provide as follows:

 I. Access to Court Records:
 * * *
 B. Sealed records. Records which are sealed or closed to the public by court order or decision shall not be disclosed, unless disclosure is authorized by a Judge.
 * * *
 E. Unexecuted or unreturned warrants. Unreturned search warrants, arrest warrants or summons in a criminal case and affidavits or sworn testimony and records of proceedings in support of the issuance of search or arrest warrants, except related to grand jury indictments, shall not be disclosed until such time as the warrants are returned.

authority to seal search warrants runs afoul of either the First Amendment or the common law. No definitive answer has been given to this question by any court of binding authority.

## A. First Amendment Right of Access

The News Journal argues that it has a constitutional right of access to search warrants under the First Amendment. In support of this position, the News Journal relies in large part on the Eighth Circuit's holding in *In re Search Warrant for Secretarial Area*, 855 F.2d 569 (8th Cir.1988), that a qualified First Amendment right of access extends to search warrants. (Int. Mem. at 4–5.) Despite its reliance on this case, the News Journal fails to mention that the Eighth Circuit ultimately upheld the closure of the warrant because of a "substantial probability that the government's on-going investigation would be severely compromised if the sealed documents were released." *Id.* at 574.

■ The First Amendment gives the public and the press a presumptive right of access to criminal jury trials. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580, 100 S.Ct. 2814, 2829, 65 L.Ed.2d 973 (1980). This right has been extended to include many aspects of the judicial process. *See, e.g .*, *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (*"Press–Enterprise II "*) (finding First Amendment right of access to transcripts of pretrial suppression hearings); *Press–Enterprise Co. v. Superior Court of California, Riverside County*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (*"Press–Enterprise I "*) (voir dire of potential jurors); *United States v. Criden*, 675 F.2d 550 (3rd Cir.1982) (*"Criden II "*) (pre and posttrial proceedings); *United States v. Smith*, 776 F.2d 1104 (3rd Cir.1985) (*"Smith I "*) (bills of particulars in support of indictments); *United States v. Simone*, 14 F.3d 833 (3rd Cir. 1994) (posttrial hearings to examine allegations of juror misconduct); *United States v. Antar*, 38 F.3d 1348 (3rd Cir.1994) (voir dire proceedings and transcripts); *United States v. Gonzalez*, 927 F.Supp. 768 (D.Del.1996) (posttrial proceeding).

However, there is a split in opinion as to whether the First Amendment right of access extends to search warrant affidavits. *See Times Mirror Co. v. United States*, 873 F.2d 1210, 1213–19 (9th Cir.1989) (no First Amendment right of access while pre-indictment investigation is ongoing); *Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir.1989) (no First Amendment right of access because of failure to meet the experience prong of the *Press–Enterprise II* test); *In re Search Warrant for Secretarial Area*, 855 F.2d at 572–575 (qualified First Amendment right of access to documents filed in support of search warrants). The Third Circuit has not addressed this issue, although it has recently held that the First Amendment right of access extends to transcripts of voir dire, *United States v. Antar*, 38 F.3d at 1361, and to posttrial hearings examining an allegation of juror misconduct. *United States v. Simone*, 14 F.3d at 840. However, a magistrate judge for the District of Delaware has found that there is no First Amendment right of access to pre-indictment warrants and documentation. *In the Matter of the Search of 1993 Jeep Grand Cherokee*, No. 96–91M, Trostle, M.J., 1996 WL 768293 (D.Del.1996). The Delaware Supreme Court has not addressed the question of public access to search warrants, but has held that there is no First Amendment right of access to names of jurors serving in a capital murder trial. *Gannett Co., Inc. v. State*, Del.Supr., 571 A.2d 735, 751 (1989) (*"Gannett II "*), *cert. denied*, 495 U.S. 918, 110 S.Ct. 1947, 109 L.Ed.2d 310 (1990).

■ Even when a First Amendment right of access is found to exist, it is a qualified and not an absolute right. *Press–Enterprise II*, 478 U.S. at 9, 106 S.Ct. at 2740; *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 605, 102 S.Ct. 2613, 2619, 73 L.Ed.2d 248 (1982). The qualified right of access may succumb to other rights or interests, such as "the defendant's right to a fair trial or the **government's interest in inhibiting disclosure of sensitive information**." *Waller v. Georgia*, 467 U.S. 39, 45, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984) (emphasis added). *See also In re Search Warrant for Secretarial Area*, 855 F.2d at

573–74 (finding that there is a qualified First Amendment right of access but affirming refusal to unseal search warrant documentation because of a "substantial probability that the government's on-going investigation would be severely compromised if the sealed documents were released.") Thus, when a constitutional right of access attaches, it is overcome only on a finding that "closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press–Enterprise I,* 464 U.S. at 510, 104 S.Ct. at 824, *quoted in Gannett II,* 571 A.2d at 742.

■ Although courts have reached different conclusions regarding the existence of a First Amendment right of access to search warrants and documentation, there is consensus on the standard to be used in analyzing the issue. The party seeking a First Amendment right of access must make a two-part threshold showing known as the experience and logic tests: first, that the place and the process have historically been open to the press (experience); second, that public access plays a significant positive role in the functioning of the process in question (logic). *Press–Enterprise II,* 478 U.S. at 8, 106 S.Ct. at 2740. *See also Gannett II,* 571 A.2d at 741 (adopting the *Press–Enterprise II* test to analysis of media access to juror names because it is the "most closely analogous basis for disposition").[6]

■ If the court finds that the moving party has made this showing, a qualified First Amendment right of access attaches. *Press–Enterprise II,* 478 U.S. at 9, 106 S.Ct. at 2740; *Gannett II,* 571 A.2d at 743. The burden then shifts to the State to show (1) proof of a compelling state interest sufficient

to override the right of access and (2) proof that the denial of the right of access is narrowly tailored to serve that interest. *Press–Enterprise II,* 478 U.S. at 9, 106 S.Ct. at 2740; *Baltimore Sun Co. v. Goetz,* 886 F.2d at 64; *Globe Newspaper Co. v. Superior Court,* 457 U.S. at 606, 102 S.Ct. at 2619.

### 1. The Experience Prong

In determining that the press enjoys a First Amendment right of access to criminal trials, the Supreme Court relied in part on a historical tradition dating to "the days before the Norman Conquest ." *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. at 565, 100 S.Ct. at 2821. The *Richmond* Court felt "bound" to acknowledge a right of access based on an "unbroken, uncontradicted history." *Id.* at 573, 100 S.Ct. at 2825. In *Press–Enterprise I,* the public selection of jurors was traced to the 16th century. 464 U.S. at 507, 104 S.Ct. at 822. In *Press–Enterprise II,* historical access to preliminary hearings was found as early as the trial of Aaron Burr for treason. 478 U.S. at 10, 106 S.Ct. at 2741. In each of these cases, the Court traced a consistent historical pattern that dictated a similar contemporary result.

However, the experience prong of the *Press–Enterprise II* test can be met with a less lengthy chronology. In *Gannett II,* the Delaware Supreme Court stated that either a historical tradition of openness or a more recent practice will suffice if there is a concomitant public expectation of openness:

[T]he crucial inquiry is whether the public has some expectation of a right of access. Whether that expectation derives from years of experience dating back to adoption or ratification of the Constitution or from a more recent tradition is inconsequential, so long as it is the type of experi-

---

6. Virtually every court addressing the question of press access to judicial processes or documents has used the *Press–Enterprise II* test, even if it is not referred to as such. *See, e.g., In re Search Warrant for Secretarial Area,* 855 F.2d at 573 (considering first whether there is an historical pattern of either secrecy or openness in regard to search warrants and second whether public access to search warrant documentation is important to the public's understanding of the judicial process, but not referencing the *Press–Enterprise*

*II* test); *In re Reporters Comm. for Freedom of the Press,* 773 F.2d 1325, 1331–32 (D.C.Cir.1985) (applying *Press–Enterprise II's* threshold test for closure to First Amendment claim of access to judicial records); *In the Matter of the Search of 1993 Jeep Grand Cherokee,* No. 96–91M, at 9 (concluding that under the *Press–Enterprise II* test, the press has no First Amendment right of access to pre-indictment search warrant documentation).

ence or tradition that should be incorporated into the Constitution. *Gannett II*, 571 A.2d at 743 n. 11. However, it must be a national tradition and not merely that of a single state or jurisdiction. *Id.* at 744.

■ In attempting to show that search warrants have historically been open to public scrutiny, Intervenor relies on the Eighth Circuit's observations that "search warrant applications and receipts are routinely filed with the clerk of the court without seal," and that they are "an integral part of a criminal prosecution." *In re Search Warrant for Secretarial Area*, 855 F.2d at 573. Intervenor also cites *Baltimore Sun Co. v. Goetz* for the proposition that search warrants are part of the judicial process because a judge's decision to issue a warrant and the sufficiency of the affidavits can be challenged on appeal. 886 F.2d at 64. (Int. Mem. at 4.)

While these assertions have merit as general observations, they are not sufficient to establish a constitutional right of access to pre-indictment search warrants and their supporting documentation. The existence of a historic procedure does not necessarily enlarge that procedure to a right of constitutional proportions. *Gannett II*, 571 A.2d at 745. "[I]t is risky ... to assume that a practice of granting access where no objection is made establishes the existence of an acknowledged right to access." *Id.*, *quoting In re Reporters*, 773 F.2d at 1336 (emphasis added).

Conversely, search warrant proceedings have historically been conducted *ex parte*. *See, e.g., Times Mirror Co. v. United States*, 873 F.2d at 1214; *In the Matter of the Search of 1993 Jeep Grand Cherokee*, No. 96–91M at 10. The federal Supreme Court has acknowledged at least twice that secrecy is a necessity in the process of obtaining a search warrant. *United States v. U.S. Dist. Court for Eastern Dist. of Mich., Southern Div.*, 407 U.S. 297, 321, 92 S.Ct. 2125, 2138, 32 L.Ed.2d 752 (1972) (observing that a criminal investigation has long involved conveying sensitive information to judges, who "have respected the confidentialities" and that a warrant application "is an *ex parte* request before a magistrate or judge"); *Franks v.*

*Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (finding that a defendant should have the right to challenge an *affiant's* truthfulness because the warrant proceedings are necessarily *ex parte* in order that the subject of the search not be warned in advance). Here again, "it is risky to assume that a practice of granting access where no objection is made establishes the existence of an acknowledged **right** to access." *In re Reporters*, 773 F.2d at 1336 (emphasis added).

These cases show that there is as much historical basis for disclosure as there is for closure. *See also In the Matter of Search of 1993 Jeep Grand Cherokee*, No. 96–91M, at 10. Thus, the search warrant application process is unlike certain other stages in the judicial process where a single "strong national tradition" in one direction or the other can be demonstrated. *Gannett II*, 571 A.2d at 745. *See Press–Enterprise II*, 478 U.S. at 10, 106 S.Ct. at 2741 (preliminary hearings); *Press–Enterprise I*, 464 U.S. at 505–508, 104 S.Ct. at 821–823 (jury selection proceedings); *Richmond Newspapers*, 448 U.S. at 564–69, 100 S.Ct. at 2820–23 (criminal trials); *Gannett Co. v. DePasquale*, 443 U.S. 368, 387–91, 99 S.Ct. 2898, 2909–11, 61 L.Ed.2d 608 (1979) (no constitutional right to attend pretrial suppression hearings). The two cases cited by the News Journal do not establish "an historic practice of such clarity, generality and duration as to justify the pronouncement of a constitutional rule." *In re Reporters*, 773 F.2d at 1336. Nor has the News Journal demonstrated an "expectation of a right of access." *Gannett II*, 571 A.2d at 743 n. 11. The Court concludes that Intervenor has not carried its burden of establishing that the search warrant process has historically been open to the public.

This failure would normally bring an end to the First Amendment inquiry. However, because the Court also finds that the investigative nature of a search warrant proceeding distinguishes it from other stages of the trial process, the Court proceeds with the logic test as the more pertinent part of the analysis. *See Criden II*, 675 F.2d at 555 (finding that historical analysis is not relevant in determining whether there is a First

Amendment right of access to pretrial criminal proceedings); *Simone*, 14 F.3d at 838 (examining the logic prong of *Press–Enterprise II* in the absence of an historical basis to support a posttrial inquiry into juror misconduct); *Gonzalez*, 927 F.Supp. at 782 (finding historical basis insufficient when considering if First Amendment right of access applies to posttrial submissions and relying instead on logic prong).

### 2. The Logic Prong

The second inquiry under the "experience and logic" test asks whether public access to the search warrants and their supporting documentation would play a significant positive role in the functioning of the process. *Press–Enterprise II*, 478 U.S. at 8, 106 S.Ct. at 2740. In considering the value of open trials, the *Richmond Newspapers* Court found six societal interests that were enhanced by open court proceedings:

> promotion of informed discussion of governmental affairs by providing the public with the more complete understanding of the judicial system; promotion of the public perception of fairness which can be achieved only by permitting full public view of the proceedings; providing a significant community therapeutic value as an outlet for community concern, hostility and emotion; serving as a check on corrupt practices by exposing the judicial process to public scrutiny; enhancement of the performance of all involved; and discouragement of perjury.

*United States v. Smith*, 787 F.2d 111, 114 (1986) ("*Smith II* ") (summarizing *Criden II*, 675 F.2d at 556).[7]

▇ Several of these interests are implicated by search warrant documentation. In regard to the first interest, "informed discussion of governmental affairs," the Court is aware that full disclosure of judicial proceedings is essential to fair and effective govern-

ment. However, at the nascent stage of a police investigation into a possible arson and murder, the Court believes that disclosure of investigative leads and witness statements would expose the investigation as well as the witnesses to unnecessary and potentially harmful scrutiny. In light of the fact that the search warrants and their documentation in this case will be open no later than January 12, 1998, the Court concludes that at this stage, the potential harm to the investigation and individuals outweighs the importance of informed discussion. This conclusion applies equally to the second factor (public perception of fairness) and the third (community therapeutic value). These interests will be advanced to the fullest extent during the trial stage, including pretrial proceedings, without hampering the investigation or possibly injuring individuals named in the search warrant documentation.

Furthermore, by definition, an investigation may change course and focus as it proceeds. Depending on where the investigation has led, unsealing the search warrant documentation at this time could disclose information that is no longer relevant but that could nevertheless harm individuals. "In sum, the danger in providing the public relevant, correct information could hamper the government's investigation; the danger in providing irrelevant or unreliable information is that the public would not be objectively educated regarding the search warrant process." *In the Matter of the Search of 1993 Jeep Grand Cherokee*, No. 96–91M, at 12.

The fourth factor that public access can serve is as a check on corrupt practices by exposing the judicial process to public scrutiny. Here again, it must be remembered that the *Richmond Newspaper* Court identified this as a result of open trial proceedings and that the pre-indictment investigation stage is categorically different from the trial itself.

---

7. There are other ways to apply the logic prong of the *Press–Enterprise II* test. In *Gannett II*, the Delaware Supreme Court asked whether the historical openness of a particular process plays " 'an essential role' in the proper functioning of government ... since otherwise the most trivial and unimportant historical practices ... would be chiseled in constitutional stone." 571 A.2d at 749, *quoting In re Reporters*, 773 F.2d at 1332.

Thus, in determining whether jurors' names must be disclosed under the First Amendment, the Court focused on whether the historical pattern of openness was anything more than a procedural matter. In the case at bar, there is no single pattern of either openness or secrecy in regard to search warrants, and it is therefore more helpful to consider the six specific interests listed in *Richmond Newspapers*.

*But see Press–Enterprise II*, 478 U.S. at 7, 106 S.Ct. at 2739 (observing that "the First Amendment question cannot be resolved solely on the label we give the event, i.e., 'trial' or otherwise").

A judge who signs a search warrant knows that the warrant and the affidavits will be subject to scrutiny after the warrant is returned and will no doubt be challenged during the course of the trial if anything is amiss. Furthermore, a neutral and detached judicial officer must review the documentation and sign the warrant only if probable cause is found to exist in order to safeguard against any possible corruption or an excess of zeal on the part of law enforcement officers. This Court agrees with the conclusion of the magistrate judge for the District of Delaware that "a further check upon this procedure, in light of the limited nature of a search warrant application, is redundant and counterproductive." *In the Matter of the Search of 1993 Jeep Grand Cherokee*, No. 96–91M, at 13.

The fifth factor is the possible enhancement of the performance of "all involved." At the pre-indictment stage this includes only the prosecutor and the police, both of whom know or have reason to know that their actions at this stage will undergo sharp scrutiny at later stages of the proceedings. Furthermore, it is the opinion of the Court that openness at this stage would impede rather than enhance performance.

The final factor is whether disclosure would discourage perjury. This concern is more appropriately addressed during the trial stage. If an individual's truthfulness to the police is an appropriate analogy to perjury by a witness, here again, the Court believes that opening the affidavits to the public is at least as likely to discourage honesty as it is to encourage it.

Having reviewed each of the six public interests addressed in *Richmond Newspapers*, the Court finds that they would not be enhanced by requiring that all pre-indictment search warrant applications be made open to the press and the public. The News Journal has therefore failed to meet the logic prong of the threshold test for determining whether a First Amendment right of access is available. For this reason, the Court holds that the press does not have a First Amendment right of access to pre-indictment search warrants and documentation. Having reached this conclusion, the Court need not decide whether there is a compelling state interest sufficient to override a constitutional right of access.

**B. Common Law Right of Access**

The News Journal argues that even if it does not have a First Amendment right to the search warrants, the common law right of access to court documents is well established. In support of this position, the News Journal asserts that common law right of access cases are resolved "under a balancing test framework," which weighs the public interest in access against the legitimate privacy concerns of third parties. (Int. Mem. at 9.)

■ Under the common law, the press and the public have a presumptive right of access to judicial documents and records. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978). This right is premised on the public's right to be informed of the operations of government and to an open court system. *United States v. Criden*, 648 F.2d 814, 819 (3rd Cir.1981) (*"Criden I "*).

■ Although neither the United States Supreme Court nor the Delaware Supreme Court has ruled that search warrants and supporting documentation are judicial records, a magistrate judge for the District of Delaware has found that executed and returned search warrants and supporting affidavits are judicial records. *In the Matter of Search of 1993 Jeep Grand Cherokee*, No. 96–91M, at 8. This Court agrees. Search warrants are controlled by court rules and are subject to challenge and proof during the trial process. They are filed with the Court (via the Prothonotary), are acted upon by the Court, and are within the Court's physical control. In the case at bar, neither party has argued that search warrants are not judicial documents, and the Court is satisfied that search warrants and supporting affidavits are judicial documents. Thus the common law presumption of openness to judicial docu-

ments extends to search warrants and their documentation.

 Under *Nixon,* the common law qualified right of access is committed to the sound discretion of the judicial officer who issued the warrant. 435 U.S. at 599, 98 S.Ct. at 1312. The strong presumption of openness can be overcome "only when the party seeking closure demonstrates that the factors opposing access outweigh those favoring it." *Smith II,* 787 F.2d at 115. Factors found to outweigh the presumption of access include a risk of harm to third parties, *United States v. Criden,* 681 F.2d 919, 921 (3rd Cir.1982) ("*Criden III* "); *Smith I,* 776 F.2d at 1113–14, and the integrity of the on-going investigation into the crime. *In re Search Warrant for Secretarial Area,* 855 F.2d at 574. When a court rules that a search warrant remain sealed, the interest to be protected must "be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press–Enterprise I,* 464 U.S. at 510, 104 S.Ct. at 824. Although the court may adopt the facts that the state presents to justify sealing the documents when the evidence appears credible, the court may not abdicate its decision-making function. *Baltimore Sun Co. v. Goetz,* 886 F.2d at 65.

 In the case at bar, the State asserts that the investigation is in the developmental stage and that unforeseen complications have developed. The State also represents that the investigation may continue for a lengthy period of time and involve numerous individuals. (St. Mem. at 6.) The Court accepts these as good faith assertions accurately reflecting the nature of the investigation. Disclosure of the contents of the search warrants and the supporting documentation could compromise the integrity of the investigation by prematurely revealing information about the nature, scope and direction of the investigation. As noted previously, the direction may change as the investigation proceeds, with potentially unforeseen effects on the evidence, witnesses and possible suspects. Disclosure could also inhibit as-yet unknown witnesses from coming forward or discourage others from speaking the whole truth.

The Court also accepts the State's assertion that disclosure of the warrant information could infringe on the privacy interest of several individuals, who may or may not be suspects. Allegations of even a peripheral involvement in a case of murder and arson could subject innocent individuals to "more than mere embarrassment" and could in fact "inflict serious injury on [their] reputations." *Smith I,* 776 F.2d at 1114. At this stage of the investigation, when the law enforcement officials themselves are unsure of the facts attending the explosion, media coverage can provide grist for the rumor mill and harm individuals in the process. Such harm, which serves no public interest, can easily be avoided by sealing the warrants until a clearer factual picture emerges or until after an indictment is filed.

 The Third Circuit has emphasized that an individual's privacy interest looms large when information is disseminated "on the basis of an investigation that [has] not yet reached the point where [the prosecutor is] willing to make a decision on whether to prosecute." *Smith II,* 787 F.2d at 116. This concern also exists in the instant case. "The trial court has an affirmative duty to control all aspects of pretrial and trial proceedings." *Gannett II,* 571 A.2d at 751. In fulfilling that duty, this Court does not hesitate to find that under the specific facts of this case the "factors opposing access outweigh those favoring it." *Smith II,* 787 F.2d at 115.

### C. Less Intrusive Alternatives

At oral argument, Intervenor's final request was that if the Court found no First Amendment or common law right of access to the search warrant documentation, a redacted version should be released. In *Criden III,* the Third Circuit ordered redaction of all material which could be "impermissibly injurious to third parties." 681 F.2d at 921. This is one less intrusive method of retaining the seal but making some information available to the public. However, it must be remembered that the *Criden III* decision pertained to an appeal by television broadcast companies from an order denying them access to videotapes introduced into evidence

during one of the ABSCAM trials. *Id.* at 920. Thus the court's order of redaction was based on the well-established principle of openness of criminal trials, as well as the public's heightened interest in the criminal acts of elected officials. These factors do not pertain to the case at bar. Furthermore, it is not possible at this point in the investigation to determine which individuals are suspects and which are "third parties."

 The magistrate judge in *Jeep Cherokee* declined to either redact or extract portions of the search warrant documentation because disclosure of any details could "either explicitly or by reference" reveal the focus of the investigation and potentially compromise its progress. *In the Matter of Search of 1993 Jeep Grand Cherokee*, No. 96–91M, at 21. This Court has carefully reviewed the sealed search warrant documentation in this case to determine whether it is feasible to unseal portions of the documents after redaction and/or extraction. The Court finds that such efforts are not feasible and that disclosure of any part could reveal the focus, direction and scope of the State's inquiry and thereby frustrate the ongoing investigation. For this reason, neither redaction nor extraction is a viable alternative at this time.

8. In *Criden II*, the Third Circuit confined its findings to the issue of accessibility to transcripts of a pretrial evidentiary hearing held *in camera*. The Court acknowledged the need for notice of closure of an evidentiary hearing. *Id.* at 557. In *DePasquale*, the United States Supreme Court discussed the issue of closure of a suppression hearing and held that the Sixth Amendment's guarantee of a public trial is for the benefit of the defendant alone and does not provide a right of access to the public to a criminal trial. Justice Powell, in his concurring opinion, noted that "[i]n the criminal process, there may be numerous arguments, consultations, and decisions, as well as depositions and interrogatories, that are not central to the process and that implicate no First Amendment rights." *DePasquale*, 443 U.S. at 397 n. 1, 99 S.Ct. at 2915 n. 1.

In *Globe Newspaper*, the United States Supreme Court found that a statute requiring mandatory closure for criminal trials involving sex offenses against minors violated the First Amendment since the statute was not a narrowly tailored means of accommodating the state's interests. The Court reasoned that a case-by-case

 Further, the Court notes that its order dated October 15, 1997, was specifically limited to a period of 90 days. This limitation is a prophylactic measure which narrowly tailors the denial of the public's right of access. *See Matter of Flower Aviation of Kansas, Inc.*, 789 F.Supp. 366, 369 (D.Kan. 1992); *Matter of Searches of Semtex Indus. Corp.*, 876 F.Supp. 426, 429 (E.D.N.Y.1995); *Matter of Office Suites for World & Islam Studies*, 925 F.Supp. 738, 744 (M.D.Fla.1996). Of course, if an indictment is returned within the 90–day period, there would be no further need for closure.

### D. Necessity for a Hearing

The News Journal argues that before a court may issue an order depriving the public of its First Amendment rights, the court must give notice of the proposed order and allow interested parties to be heard so that they may challenge the order. (Int.Mem. at 7.) For this proposition, the News Journal cites *Press–Enterprise I*, 464 U.S. 501, 104 S.Ct. 819; *Globe Newspaper*, 457 U.S. 596, 102 S.Ct. 2613; *DePasquale*, 443 U.S. 368, 99 S.Ct. 2898; *In re Knight Publishing Co.*, 743 F.2d 231, 234 (4th Cir.1984); and *Criden II*, 675 F.2d at 558.

 The Court finds that the cases cited in support of the News Journal's contention are inapposite.[8] All of the cited cases in-

review by the trial court to determine whether the state's legitimate interest in the well-being of a minor victim necessitated closure would pass constitutional muster. In so finding, the Court observed that

[s]uch an approach ensures that the constitutional right of the press and public to gain access to criminal trials will not be restricted except where necessary to protect the State's interest.

*Globe Newspaper*, 457 U.S. at 609, 102 S.Ct. at 2621.

In *Press–Enterprise I*, the Court determined that voir dire of potential jurors is not subject to closure except "by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." 464 U.S. at 510, 104 S.Ct. at 824. The Court emphasized historical openness of trials and jury selection as a presumptively public process except for good cause shown. *Id.*

Finally, *In re The Knight Publishing Co.* the Fourth Circuit addressed the trial court's closure of a courtroom and sealing of certain pretrial motions without a hearing. The court held that

volved postindictment proceedings. Unlike closures of the suppression or evidentiary hearings and trials, the issuance of a search warrant and its sealing do not involve a hearing where evidence is presented in open court with the accompanying opportunity for the accused to challenge the requested authorization of the warrant.

Rather, the issuance of a search warrant is a unilateral *ex parte* action. The subject of the warrant is rarely aware of its issuance. The twin purposes of *ex parte* search warrant authorizations are to preserve evidence and to maintain objective information without encroachment by the public. The public's opportunity to later scrutinize the conduct of law enforcement officials, prosecutors or the court is in no way compromised.

 While the News Journal's contention regarding postindictment proceedings is correct, the Court rejects the expansive and novel proposition that closure hearings must be had with regard to pre-indictment judicial authorizations for the sealing of search warrant documentation.

## IV. CONCLUSION

The Court concludes that the First Amendment qualified right of access does not extend to pre-indictment search warrants and their supporting documentation. The Court further concludes that the common law presumption of openness of judicial documents, while including search warrant documentation, is outweighed in this case by the State's interest in protecting the integrity of the investigation at this early stage and by the potential harm to individuals posed by premature dissemination of the search warrant information. Therefore, the Superior Court Rules and the Administrative Directive giving his Court discretion to seal search warrants and their supporting documentation on a showing of good cause do not run afoul of either the Constitution or the common law.

For these reasons, the Intervenor's motion to unseal the search warrant documentation is hereby ***Denied.***

***It is So ORDERED.***

"representatives of the press and general public 'must be given an opportunity to be heard on the question of their exclusion.'" 743 F.2d at 234, *citing Globe Newspaper,* 457 U.S. at 609 n. 25, 102 S.Ct. at 2621 n. 25. "When a closure motion is made **in open court,** persons present must be given notice and an opportunity to object before the public can be excluded." *Id.* (emphasis added.)

In short, none of the cases cited by the News Journal pertain to pre-indictment closure of search warrant documentation.