IN RE SEARCH WARRANT FOR 3628 V STREET,
OMAHA, DOUGLAS COUNTY, NEBRASKA.
STATE OF NEBRASKA, APPELLANT, V.
JEFFREY RYBIN, APPELLEE.

628 N.W. 2d 272

Filed June 29, 2001.   No. S-00-007.

James S. Jansen, Douglas County Attorney, and Robert Francis Cryne for appellant.

Michael J. Tasset, of Johnson and Mock, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

Jeffrey Rybin filed a motion to unseal an affidavit used in support of a search warrant issued for his home, asserting a right of public access under the First Amendment to the U.S. Constitution. The district court ordered that the affidavit be unsealed, and the State appealed.

## FACTUAL BACKGROUND

On August 17, 1998, Special Agent Farrell Fisher, of the U.S. Drug Enforcement Administration (DEA), applied to the Douglas County Court for a warrant authorizing the search of a residence located at 3628 V Street in Omaha, Nebraska. This residence was owned and occupied by Rybin. In support of the

application, Fisher submitted an affidavit containing information provided by a confidential informant.

The search warrant was issued by the Douglas County Court on August 17, 1998, and executed on the same day. However, no evidence of criminal activity was discovered, and accordingly, no criminal proceedings were instituted against Rybin.

On August 24, 1998, Fisher's affidavit was sealed by order of the county court. On the same day, the search warrant, affidavit, and return were filed with the clerk of the district court pursuant to Neb. Rev. Stat. § 29-816 (Reissue 1995). Section 29-816 states in pertinent part:

> The judge or magistrate who has issued the search warrant shall attach to the warrant a copy of the return, inventory, and all other papers in connection therewith and shall file them with the clerk of the district court . . . . The clerk of the district court shall file and index such warrant, together with the return thereon, the inventory, and other papers in connection therewith as a separate criminal proceeding. No fee shall be charged or collected for such service.

On September 15, 1998, Rybin filed a "Motion to Unseal Affidavit" in the district court for Douglas County. Rybin asserted in his motion that sealing the affidavit violated his "qualified First Amendment right of access." A hearing on this motion was held on September 28. At this hearing, Rybin asserted that under *In re Search Warrant for Secretarial Area-Gunn*, 855 F.2d 569 (8th Cir. 1988), he possessed a qualified First Amendment right of public access to the affidavit. Rybin offered no other grounds for his request to unseal the affidavit.

At the hearing on the motion, the only evidence offered by Rybin was the sealed search warrant, affidavit, and return. The State then called Fisher to testify. Fisher testified that Rybin telephoned him the day after the search was conducted, wanting to know who provided the information which led to the search. Fisher refused to give Rybin the confidential informant's identity. Fisher further testified that Rybin submitted a claim to the DEA for damage to his property which had occurred during the search. According to Fisher, the claim had been approved by the

DEA and a check compensating Rybin for his property damage was forthcoming.

Regarding the identity of the confidential informant, Fisher testified that the information contained in the affidavit would assist Rybin in ascertaining the identity of the informant, even though the name of the informant was not stated in the affidavit. Fisher further testified that the affidavit should not be unsealed because "the identity would be — most likely be revealed of this confidential source, and it could be made public and — and his effectiveness — his or her effectiveness would not be useful to — to us." Fisher further testified that the confidential informant was currently involved in two ongoing DEA investigations.

On April 3, 2000, the district court ordered the affidavit unsealed "except for the identity of a confidential informant." The State appealed, contending that partially unsealing the affidavit would nevertheless allow Rybin to determine the identity of the informant. We moved this case to our docket pursuant to our authority to regulate the caseloads of Nebraska appellate courts. Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

The State asserts, restated and renumbered, that the district court erred in granting Rybin's motion because (1) the State's interest in protecting the informant's identity defeats any First Amendment qualified right of public access, (2) Rybin failed to demonstrate a material need for the information contained in the affidavit, and (3) the trial court abused its discretion in unsealing the affidavit.

## STANDARD OF REVIEW

■ On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *State v. Bottolfson*, 259 Neb. 470, 610 N.W.2d 378 (2000); *State v. Spotts*, 257 Neb. 44, 595 N.W.2d 259 (1999).

## ANALYSIS

The State argues that the trial court erred in unsealing any portion of the affidavit because the State's interest in protecting the identity of the confidential informant outweighs Rybin's asserted qualified First Amendment right of public access. This

issue presents a question of law regarding which we are obligated to reach a conclusion independent of the trial court. *State v. Bottolfson, supra.*

Rybin, in addition to his assertion of a qualified First Amendment right, also contends in his brief that the district court's decision should be affirmed based on a common-law right of judicial access, or the Fourth Amendment. However, because these issues were not raised by Rybin before the trial court, they will not be addressed on appeal. See *State v. Moore,* 256 Neb. 553, 591 N.W.2d 86 (1999).

■ The First Amendment right of public access traditionally gives the press and the public the right to attend criminal trials, absent an overriding interest of higher value which necessitates closing the proceedings. See *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982). However, neither this court nor the U.S. Supreme Court has recognized the existence of a First Amendment right of public access to affidavits in support of search warrants. In *Press-Enterprise Co. v. Superior Court,* 478 U.S. 1, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986), the Supreme Court articulated the general principles to consider in determining when a qualified First Amendment right of public access exists. In *Press-Enterprise Co.,* the plaintiff's motion to unseal the transcript of a preliminary hearing in a criminal prosecution was denied. On appeal, the Supreme Court determined that a qualified First Amendment right of public access existed with regard to the transcript and granted the plaintiff access to the document. *Id.*

■ In *Press-Enterprise Co.,* the Court identified "two complementary considerations" for courts to use when determining whether a First Amendment right of public access exists. 478 U.S. at 8. The first is "considerations of experience," 478 U.S. at 9, namely, whether there is a " ' "tradition of accessibility" ' " in that "the place and process have historically been open to the press and general public," 478 U.S. at 8. The second is "considerations of . . . logic," 478 U.S. at 9, as to "whether public access plays a significant positive role in the functioning of the particular process in question," 478 U.S. at 8.

Numerous jurisdictions have considered whether applications for search warrants have historically been open to the press and

public. See, *Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989); *Times Mirror Co. v. U.S.*, 873 F.2d 1210 (9th Cir. 1989); *In re Search Warrant for Secretarial Area-Gunn*, 855 F.2d 569 (8th Cir. 1988); *U.S. v. Certain Real Property Located in Romulus*, 977 F. Supp. 833 (E.D. Mich. 1997); *In re Macon Telegraph Publishing Co.*, 900 F. Supp. 489 (M.D. Ga. 1995); *Matter of Flower Aviation of Kansas, Inc.*, 789 F. Supp. 366 (D. Kan. 1992); *Matter of 2 Sealed Search Warrants*, 710 A.2d 202 (Del. Super. 1997); *Newspapers of New England, Inc. v. Clerk-Magistrate of the Ware Division of the District Court*, 403 Mass. 628, 531 N.E.2d 1261 (1988); *State v. Archuleta*, 857 P.2d 234 (Utah 1993); *Seattle Times Co. v. Eberharter*, 105 Wash. 2d 144, 713 P.2d 710 (1986); *State v. Cummings*, 199 Wis. 2d 721, 546 N.W.2d 406 (1996).

■ Aside from the Eighth Circuit in *In re Search Warrant for Secretarial Area-Gunn, supra*, federal courts which have considered the issue have concluded that applications for search warrants have not historically been open to the press and public. See, *Baltimore Sun Co. v. Goetz, supra*; *Times Mirror Co. v. U.S., supra*; *U.S. v. Certain Real Property Located in Romulus, supra*; *In re Macon Telegraph Publishing Co., supra*; *Matter of Flower Aviation of Kansas, Inc., supra*. The same is true of the majority of state courts which have considered this issue. See, *Matter of 2 Sealed Search Warrants, supra*; *Newspapers of New England, Inc. v. Clerk-Magistrate of the Ware Division of the District Court, supra*; *Seattle Times Co. v. Eberharter, supra*; *State v. Cummings, supra*. Only the State of Utah, relying on the reasoning of the Eighth Circuit in *In re Search Warrant for Secretarial Area-Gunn, supra*, has found a tradition of public access regarding warrant applications. *State v. Archuleta, supra*.

In *In re Search Warrant for Secretarial Area-Gunn, supra*, the Eighth Circuit reasoned that because warrants and supporting affidavits are traditionally filed with the courts as public records, such proceedings are generally accessible to the press and the public. Rybin relies upon *In re Search Warrant for Secretarial Area-Gunn* to support his claim of public access. However, the Eighth Circuit's decision is not binding authority upon this court. See *Lockhart v. Fretwell*, 506 U.S. 364, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993) (Thomas, J., concurring)

(state courts bound by Supreme Court's interpretation of federal law, but not bound by circuit court's interpretation). See, also, *Bromley v. Crisp*, 561 F.2d 1351 (10th Cir. 1977) (state courts may express differing views on federal questions until guided by binding decision of Supreme Court).

The test adopted by the U.S. Supreme Court is whether the "place and process" of the criminal proceeding has traditionally been open to the press and public. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986). Applications for search warrants, which compose the process from which the affidavits arise, are conducted ex parte, typically without the press and public present. See, e.g., *Baltimore Sun Co. v. Goetz, supra*; *Times Mirror Co. v. U.S., supra*. Compare, also, *Franks v. Delaware*, 438 U.S. 154, 169, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978) (proceeding for issuing search warrant is "necessarily *ex parte,* since the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove evidence"); *United States v. United States District Court*, 407 U.S. 297, 321, 92 S. Ct. 2125, 32 L. Ed. 2d 752 (1972) ("a warrant application involves no public or adversary proceedings: it is an *ex parte* request before a magistrate or judge"). We agree with the majority of courts which have concluded that search warrant applications have not historically been open to the press and public. As such, we determine that "considerations of experience" do not support a First Amendment right of access in this case. See *Press-Enterprise Co. v. Superior Court*, 478 U.S. at 9.

We next turn to "considerations of . . . logic," 478 U.S. at 9, to determine "whether public access plays a significant positive role in the functioning of the particular process in question," 478 U.S. at 8. As noted by the Supreme Court, "there are some kinds of government operations that would be totally frustrated if conducted openly." 478 U.S. at 9. Search warrants, by their very nature, rely on the ex parte application proceeding in order to be effective in seizing evidence of criminal activity. The ultimate purpose of an application for a search warrant is to enable the government to lawfully seize evidence of criminal activity. This purpose would be totally frustrated if the public had access to such proceedings. Once the secrecy of the search affidavit

proceeding is eliminated, the element of surprise necessary to effectuate the warrant has been lost. See, e.g., *Franks v. Delaware, supra.*

■ For the foregoing reasons, we determine that public access to search warrant applications would not play "a significant positive role" in the functioning of the warrant application process. See, also, *Times Mirror Co. v. U.S.*, 873 F.2d 1210 (9th Cir. 1989); *U.S. v. Certain Real Property Located in Romulus*, 977 F. Supp. 833 (E.D. Mich. 1997); *In re Macon Telegraph Publishing Co.*, 900 F. Supp. 489 (M.D. Ga. 1995); *Matter of Flower Aviation of Kansas, Inc.*, 789 F. Supp. 366 (D. Kan. 1992); *Matter of 2 Sealed Search Warrants*, 710 A.2d 202 (Del. Super. 1997); *Newspapers of New England, Inc. v. Clerk-Magistrate of the Ware Division of the District Court*, 403 Mass. 628, 531 N.E.2d 1261 (1988); *Seattle Times Co. v. Eberharter*, 105 Wash. 2d 144, 713 P.2d 710 (1986); *State v. Cummings*, 199 Wis. 2d 721, 546 N.W.2d 406 (1996).

■ Accordingly, we determine that no qualified First Amendment right of public access attaches to an affidavit in support of a search warrant. Rybin possesses no right of access under the First Amendment which would allow the district court to unseal any portion of the affidavit.

Having so determined, it is not necessary to reach the State's other assignments of error.

## CONCLUSION

The district court's decision ordering the affidavit to be unsealed is reversed, and the cause is remanded with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.