The Honorable Lindsley Smith State Representative 340 North Rollston Avenue Fayetteville, Arkansas 72701-4178
Dear Representative Smith:
I am writing in response to your request for an opinion on three questions concerning search warrant affidavits. You state that "[t]here is some debate as to whether or not the provisions of Rule 13.4 under the Arkansas Rules of Criminal Procedure require search warrant affidavits to be file-marked, or if the file marking of the search warrant and search warrant return would suffice." You pose the following three questions:
 1. Under the provisions of ARCrP 13.4, is it mandatory that a search warrant affidavit be file marked, or just the search warrant and search warrant return?
 2. If the provisions of ARCrP 13.4 mandate that a search warrant affidavit be filed marked, what is the time frame after the search warrant has been executed that the affidavit must be filed marked?
 3. If ARCrP 13.4 mandates that a search warrant affidavit be file marked, are there any provisions that would delay or seal the affidavit from being made accessible to the public under FOIA until the ongoing investigation has been completed?
RESPONSE
It is my opinion that the answer to your first question is "yes," Rule 13.4 requires search warrant affidavits to be filed by the judicial officer after execution of the warrant. Subsection (c) of Rule 13.4 requires the judicial officer, after execution and return of the warrant, to "file the warrant, report, and list returned to him with the record of theproceedings on the application for the warrant." (Emphasis added). In my opinion this language would include any affidavits that were considered in reaching the decision to issue a search warrant. In response to your second question, the Rule does not set a definite time within which the judicial officer must file the affidavit, but Rule 13.4 requires the law enforcement officer executing the warrant, or another officer acting in his behalf, to return an executed search warrant "as soon as possible and not later than the date specified in the warrant." Rule 13.4(b). The immediately succeeding subsection of the Rule requires the judicial officer to "file the warrant, report, and list returned to him with the record of the proceedings on the application for the warrant." In my opinion this language contemplates a reasonably prompt filing after the return of the warrant and other materials by the law enforcement official. In response to your third question, in my opinion search warrant affidavits filed pursuant to Rule 13.4 (c) are available for public access absent the entry of a court order to seal the records. The exact parameters of the public's right to access such documents, a court's authority to seal them, and the test to be applied before such records can be sealed, are unclear under current Arkansas law. It has been suggested that the FOIA has limited applicability to court records. Nonetheless, two other avenues of access are relevant: the First Amendment, and the common law. It is unclear in Arkansas, however, whether a First Amendment right to access such documents exists, or whether the right is based solely on common law principles. The distinction is important in determining the circumstances under which a court can seal the records. In any event, the Arkansas Supreme Court has indicated that under the common law, a trial court's authority to seal records, absent an authorizing statute or court rule, is very limited and must "lie beyond a formidable threshold." In my opinion, therefore, search warrant affidavits may not be sealed unless the court determines, after balancing the competing interests, that closure is necessary to preserve weightier interests.
Question 1 — Under the provisions of ARCrP 13.4, is itmandatory that a search warrant affidavit be file marked, or justthe search warrant and search warrant return?
In my opinion the answer to this question is "yes," the search warrant affidavit must be file marked. As you indicate, Rule 13 of the Arkansas Rules of Criminal Procedure governs search and seizure pursuant to a warrant. Rule 13.1 pertains to the issuance of search warrants and requires applications for search warrants to be "supported by one (1) or more affidavits or recorded testimony under oath. . . ." Rule 13.1 (b).[1] Another provision of Rule 13.1 (subsection (d)), provides that "[i]f the judicial officer finds that the application meets the requirements of this rule and that, on the basis of the proceedings before him, there is reasonable cause to believe that the search will discover persons or things specified in the application and subject to seizure, he shall issue a search warrant. . . ."[2]
Rule 13.4, which is the subject of your question, governs return of the warrant, whether executed or unexecuted,[3]
to the issuing judicial officer. Rule 13.4 provides in its entirety as follows:
 (a) If a search warrant is not executed, the officer shall return the warrant to the issuing judicial officer within a reasonable time, not to exceed sixty (60) days from the date of issuance, together with a report of the reasons why it was not executed.
 (b) An officer who has executed a search warrant or, if such officer is unavailable, another officer acting in his behalf, shall, as soon as possible and not later than the date specified in the warrant, return the warrant to the issuing judicial officer together with a verified report of the facts and circumstances of execution, including a list of things seized.
 (c) Subject to the provisions of subsection (d), the issuing judicial officer shall file the warrant, report, and list returned to him with the record of the proceedings on the application for the warrant.
In any event, the judicial officer shall cause the list to be given such public notice as he may deem appropriate.
 (d) If the issuing judicial officer does not have jurisdiction to try the offense in respect to which the warrant was issued or the offense apparently disclosed by the things seized, he may transmit the warrant and the record of proceedings for its issuance, together with the documents submitted on the return, to an appropriate court having jurisdiction to try the offense disclosed.
Emphasis added.
In my opinion the emphasized language above requires the judicial officer, once the search warrant is executed and returned, to file any affidavits considered in making the determination to issue the search warrant. Such affidavits are in my opinion a part of the "record of the proceedings on the application for the warrant." In many cases, the affidavit may be the only record upon which the determination is based. See
ARCrP 13.1. The record maybe subjected to further review in the event of a motion to suppress evidence. See ARCrP 16.2 and Rules of Appellate Procedure — Criminal, Rule 3. In my opinion, therefore, Rule 13.4 requires its filing. See also Fisk v.State, 5 Ark. App. 5, 9, 631 S.W.2d 626 (Ark.App. 1982) (noting in dictum, in response to a defendant's assertion that the prosecution failed to supply a search warrant and search warrant affidavit in response to a discovery request, that search warrants and search warrant affidavits "are required to be filed and are available as public records").
Although I have opined above that Rule 13.4 requires the judicial officer to "file" the affidavit, your first question asks whether such affidavits must be "file marked."[4] The "marking" of records placed on file with the court is addressed in Administrative Order of the Supreme Court, No. 2(a), which states that "[a]ll papers filed with the clerk, all process issued and returns thereon, all appearances, orders, verdicts and judgments shall be noted chronologically in the dockets and filed in the folio assigned to the action and shall be marked with its file number." (Emphasis added). In response to your first question, therefore, as to whether such affidavits must be "file marked," in my opinion the answer is "yes."
Question 2 — If the provisions of ARCrP 13.4 mandate that asearch warrant affidavit be filed marked, what is the time frameafter the search warrant has been executed that the affidavitmust be filed marked?
Rule 13.4 does not set a definite time within which the judicial officer must file the affidavit after the return of the warrant. It is clear, however, from Rule 13.4, that the law enforcement officer must return the warrant "as soon as possible" after its execution and not later than the date specified in the warrant. Rule 13.4(b). (In this regard, Rule 13.2(b)(v) requires the warrant to state the period of time, not to exceed five days after execution, within which the warrant is to be returned.) The immediately succeeding portion of Rule 13.4 (subsection (c)), requires the judicial officer to file the warrant, report, and list "with the record of the proceedings on application for the warrant." In my opinion this portion of the Rule contemplates a reasonably prompt filing by the judicial officer after the return of the warrant and other materials by the law enforcement officer. See, e.g., In re the Baltimore SunCompany v. Goetz, 886 F.2d 60, 64 (4th Cir. 1989) (stating, under similar federal rule, that "[a]lthough the rule is silent about the time the papers should be filed, we believe implicit in the rule is the direction that they be filed within a reasonable time after the warrant is executed. . . . Concealing warrant papers after the warrant has been executed would be error. If the content of the papers should not be disclosed, they should be placed under seal and docketed").
Question 3 — If ARCrP 13.4 mandates that a search warrantaffidavit be file marked, are there any provisions that woulddelay or seal the affidavit from being made accessible to thepublic under FOIA until the ongoing investigation has beencompleted?
In my opinion once the search warrant affidavit is filed with the return of the warrant and other materials, it is available as a public record unless the court enters or has entered an order to seal it. The Arkansas Court of Appeals stated in Fisk,supra, that such records are "required to be filed and are available as public records." Id. at 9. See also, Beckette v.State, 31 Md. App. 85, 355 A.2d 515, 518 (1976) ("Court files, unless sealed by order of the court, are properly viewable by any person)" citing Perlman v. United States, 247 U.S. 7 (1918);Ex Parte Uppercu, 239 U.S. 435 (1915); and In the Matter ofthe Search of Office Suites for World and Islam StudiesEnterprise, 925 F. Supp. 738 (M.D. Fla. 1996) ("Once search warrants are executed and returned, absent an order sealing the documents, both the search warrant and the affidavit are part of the public domain. . . ."). Notwithstanding the public nature of the documents, once filed, the Arkansas Supreme Court has recognized "the inherent authority of a trial court to issue appropriate protective orders to control court records, and thus, the right to inspect court records is not absolute." Arkansas BestCorporation v. General Electric Corporation, 317 Ark. 238, 245,878 S.W.2d 708 (1994), quoting Ark DHS v. Hardy, 316 Ark. 119,871 S.W.2d 352 (1994). A court's authority to seal court records is similarly not absolute. Constitutional, statutory, and common law imperatives may circumscribe a court's authority to seal records. See discussion, infra. The exact nature of the right to inspect search warrant affidavits and the exact parameters of a court's authority to seal such records are unclear under current Arkansas law.
With regard to the nature of the right to inspect such records, at least three different lines of analysis have to be discussed: 1) the FOIA; 2) the common law right to access court records; and 3) the First Amendment. The applicability of each, and the distinctions between them, is critical to determining the level of public access to the documents and/or a court's authority to seal them.
First, the FOIA grants citizens the right to inspect and copy "public records," which have been expansively defined as including "writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium required by law to be kept or otherwise kept and that constitute a record of the performance or lack of performance of official functions that are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds." A.C.A. § 25-19-103(5)(A) (Supp. 2005). It has been stated that "the FOIA `public funding' language is sufficiently broad to include the judicial branch. And the FOIA exemption for certain records of Supreme Court Justices presupposes the statute's applicability to the courts." Watkins Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT (mm Press, 4th edition, 2004) at 35-36. Although the provisions of the FOIA, including the exemptions to public disclosure contained therein, apply on their face to court records, it has been suggested that the separation of powers doctrine circumscribes the applicability of the FOIA in the context of court records, at least where court rules or orders conflict with its provisions. See Arkansas Newspapers,Inc. v. Patterson, 281 Ark. 213, 215, 662 S.W.2d 826 (1984) (stating that the exemption in the FOIA for "documents that are protected from disclosure by order or rule of court [A.C.A. §25-19-105(b)(8)], . . . prevents any entanglement in the separation of powers doctrine").[5] See also, Watkins and Peltz,supra at 36, stating that "a strict view of separation of powers might preclude application of the FOIA to the judiciary." The applicability of the FOIA to court records is therefore somewhat circumscribed by the separation of powers doctrine.
Second, in any event, it has been stated that "[n]otwithstanding operation of the FOIA or another statute to compel the release of judicial records, the Arkansas Supreme Court twice in 1994 recognized the continued viability of a common law right of access to court records and proceedings." Watkins and Peltz, supra at 40, citing Arkansas Department ofHuman Services v. Hardy, 316 Ark. 119, 871 S.W.2d 352 (1994) (relying on common law principles in reversing a chancellor's decision to seal a final order in a paternity action); andArkansas Best Corporation v. General Electric CapitalCorporation, 317 Ark. 238, 878 S.W.2d 708 (1994) (relying on the common law right of access in reversing the trial court's order to seal a settlement agreement). See also, Nixon v. WarnerCommunications, Inc., 435 U.S. 589, 597-598 (1978) (recognizing a common law right to access court documents). These Arkansas Supreme Court decisions indicate that the court does not view the FOIA as having replaced or altered the common law right of the public to access court proceedings and records.[6] This common law right of public access must therefore be discussed in response to your third question to determine the extent to which the records you describe may be sealed. Unfortunately, however, the Arkansas Supreme Court has not specifically articulated the circumstances under which the common law right of access must give way to the court's inherent authority to seal records.
Third, there is a limited First Amendment right of the public to attend pre-trial criminal proceedings. Press EnterpriseCompany v. Superior Court ("Press-Enterprise II"), 478 U.S. 1
(1986) (preliminary hearing), and Press-Enterprise Company v.Superior Court ("Press-Enterprise I"), 464 U.S. 501 (1984) (voir dire). See also, Richmond Newspapers Inc. v. Virginia,448 U.S. 555 (1980) ("The right of access to places traditionally open to the public, as criminal trials have long been, may be seen as assured by the amalgam of the First Amendment guarantees of speech and press; and their affinity to the right of assembly is not without relevance."). The courts are not in agreement as to what extent this right extends to court records, as opposed to proceedings, and Arkansas case law is unclear on this issue. It should be noted, however, that the federal Eighth Circuit Court of Appeals and the highest court of one state have gone so far as to expressly conclude that the public possesses a qualified First Amendment right to access federal search warrant affidavits.[7] See In re Search Warrant for SecretarialArea Outside Office of Gunn, 855 F.2d 569 (8th Cir. 1988),cert denied, 488 U.S. 1009 (1989); and State v. Archuleta,
217 Utah Adv. Rep. 16, 857 P.2d 234 (1993). This view is a distinct minority position. The Eighth Circuit decision, however, and of course the Utah decision, are not binding on the Arkansas Supreme Court. See e.g., State v. Rybin, 262 Neb. 77,628 N.W.2d 272 (2001) (Gunn not binding in Nebraska Supreme Court's determination of First Amendment right to access search warrant affidavits, noting that while state courts are bound by the U.S. Supreme Court's interpretation of federal law, they are not bound by federal circuit courts' interpretations).
As noted above, the applicability of and distinctions between these three lines of analysis (the FOIA, the common law right of access, and any First Amendment right), are critical in analyzing to what extent search warrant affidavits are available for public access and in what instances they may be sealed. It might be suggested, if the FOIA were the sole relevant law, that the FOIA's exemption for "undisclosed investigations by law enforcement agencies of suspected criminal activity" (see A.C.A. § 25-19-105(b)(6)), would shield search warrant affidavits even after they are returned and filed with the court, and even though no court order to seal the records has been entered or balancing of interests occurs. Cf. In re Sealed Documents, 172 Vt. 152,772 A.2d 518, 524 (2001) (noting the state's alternative assertion in that case (if the Vermont court records statute didn't apply), that access to search warrant affidavits would be governed by the state's "Public Records Act," and thus the exemption in that law for records "dealing with the detection and investigation of crime").[8] In my opinion, however, the answer to your third question regarding whether "there [are] any provisions that would delay or seal the affidavit from being made accessible to the public under FOIA" depends upon more than the application of the FOIA and its exemptions.
As between a common law right and any First Amendment right, it has been stated that "[t]he distinction between the rights afforded by the first amendment and those afforded by the common law is significant. A first amendment right of access can be denied only by proof of a `compelling governmental interest' and proof that the denial is `narrowly tailored to serve that interest.' [Citation omitted.] In contrast, under the common law, the decision to grant or deny access is `left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of a particular case.'" Baltimore Sun Company v. Goetz, 886 F.2d 60, 64, (4th Cir. 1989), cert denied, 498 U.S. 880 (1990) (citingGlobe Newspaper Co. v. Superior Court, 457 U.S. 596 (1982); andNixon v. Warner Communications, Inc., 435 U.S. 589 (1978)). It has also been stated that: "[w]hich right attaches depends on whether search warrants and search warrant materials are considered simply `judicial records,' and therefore governed by the common law public right to access discussed in Nixon v.Warner Communications, Inc., 435 U.S. 589, 597-98,55 L.Ed.2d 570, 98 S. Ct. 1306 (1978), or . . . are considered part of a criminal proceeding and therefore given the full First Amendment protection discussed in Press-Enterprise Co. v. Superior Court,464 U.S. 501, 510, 78 L.Ed.2d 629, 104 S. Ct. 819 (1984) (PressEnterprise I) and Press-Enterprise Co. v. Superior Court,478 U.S. 1, 9, 92 L. Ed.2d 1, 106 S.CT. 2735 (1986) (Press-Enterprise II)." State v. Cummings, 199 Wis.2d 721,546 N.W.2d 406, 412-413, (1996).
In Nixon, referred to above, the United States Supreme Court found it "clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." 455 U.S. at 597. The Court "assumed" it applied to the tapes at issue in Nixon. Id.
at 599. In Press-Enterprise II, supra, the Court held that a First Amendment right of access attaches to preliminary hearings in criminal cases, focusing on a two-part test: 1) whether the place and process have historically been open to the press and the general public; and 2) whether public access plays a significantly positive role in the functioning of the particular process in question. It has been stated, however, that "[t]he Supreme Court has not addressed the question whether the First Amendment right of public access extends to documents." In reSearch Warrant for Secretarial Area Outside Office of Gunn,855 F.2d at 573 (emphasis original).
This case law, therefore, and the case law developed by the Arkansas Supreme Court with regard to the public's right to access court records (and the authority of courts to seal them), must therefore be examined to determine, in response to your third question, what "provisions" exist in Arkansas that might delay or seal search warrant affidavits from being made public.
Two Arkansas cases require discussion with regard to the First Amendment issue. The first is the 1983 case of ArkansasTelevision Company v. Tedder, 281 Ark. 152, 662 S.W.2d 174
(1983). At issue in Arkansas Television was the right to attend a pre-trial suppression hearing. The Arkansas Supreme Court, relying on the U.S. Supreme Court precedents in RichmondNewspapers, Inc. v. Virginia, 448 U.S. 555 (1980) and GlobeNewspaper Co. v. Superior Court, 457 U.S. 596 (1982),[9]
held that the First Amendment grants a public right of access to pre-trial proceedings. The court stated that its conclusion was consistent with the court's "tradition [of] case law of open judicial proceedings" and with what is now A.C.A. § 16-10-105
("The sittings of every court shall be public, and every person may freely attend the sittings of every court.") The court held that the First Amendment right, however, was not unqualified and must be balanced against the defendant's Sixth Amendment right to a fair trial. The Arkansas Supreme Court held that in order to overcome the presumption of open pre-trial hearings the proponent of closure must demonstrate that: 1) irreparable damage to the defendant's fair trial will result from openness; and 2) alternatives to closure will not adequately protect the right to a fair trial. Id. at 157. The Arkansas Television case did not discuss any right of access to court records as opposed to court proceedings. This point is discussed in the second case requiring discussion on the constitutional issue, a case decided the following month, Arkansas Newspapers Inc. v. Patterson,supra.
In Arkansas Newspapers Inc. v. Patterson, supra, at issue was the closing of two pre-trial proceedings in a criminal case and the sealing of one pre-trial motion in the case. The Arkansas Supreme Court relied upon the recently decided ArkansasTelevision case and concluded that the test for closing the hearings had not been met. With regard to the sealing of a criminal pre-trial motion, the court first discounted the plaintiff's argument that the FOIA mandated continued access to a pre-trial motion on file with the court. The court noted the FOIA's exemption for documents protected by "order or rule of court," which would authorize the sealing of court records by court order. See A.C.A. § 25-19-105(b)(8) (Supp. 2005). ThePatterson court stated, however, that:
 The general rule remains that pretrial proceedings and their record must be open to the public,
including representatives of the news media, and before an exception to that general rule is made, the test set out in Arkansas Television must be met. If that standard is met and a pleading is ordered sealed, it must be opened to the public as soon as the probability of irreparable damage to the accused's right to a fair trial no longer exists.
Id. at 215. (Emphasis added.)
The decision in Patterson, like the decision in ArkansasTelevision, was also decided before the U.S. Supreme Court decision in Press-Enterprise II. The Patterson case leaves unclear three issues.
First, the decision in Patterson is not explicit in delineating whether the right to access pre-trial records in a criminal case is based upon the First Amendment or perhaps a common law right of access. The court merely refers to the "general rule" that pre-trial criminal proceedings "and their record" must be open to the public and applies the ArkansasTelevision test to a trial judges' decision to seal pre-trial criminal records. As noted earlier, the United States Supreme Court has not considered the question of whether the First Amendment grants access to judicial records. Gunn, supra at 573. It has been stated that "the Arkansas Supreme Court has not considered the First Amendment right of access beyond criminal trials and related proceedings, [but] has recognized a right of access to judicial records under the common law." Watkins and Peltz, supra at 44. Some uncertainty exists, therefore, as to whether the decision in Patterson adopts a First Amendment right to access records of criminal pre-trial proceedings in Arkansas or just a common law right (discussed infra).
Second, at issue in Patterson was a pre-trial motion in a pending case. The court was not faced with the question of the public's right to access criminal records for which no charges or criminal case had yet been filed, as may commonly be the situation with a request to access search warrant affidavits. Questions may arise as to whether the Arkansas Supreme Court would recognize any constitutional or common law rights to access court records at such an early stage in the investigative proceedings. Proponents of closure often argue that the issuance of search warrants is an "investigatory proceeding" rather than a more traditional court proceeding, or that it is "ancillary to the investigation . . . and not to the criminal trial itself," and that as a consequence, rights of access should not attach at this stage. See e.g., Gunn, supra at 572, In Re. the Baltimore SunCompany v. Goetz, 886 F.2d 62, 63 (4th Cir. 1989); and InRe. Macon Telegraph Publishing Company, 900 F. Supp. 489 (M.D. Ga. 1995).
Third (on the other side of the equation), the only right balanced against the public's right of access in Patterson is the defendant's constitutional right to a fair trial. Additional questions may arise as to the inherent authority of a court to seal a search warrant affidavit, not to protect a defendant's constitutionally protected right to a fair trial, but to protect separate and in some cases less than constitutionally compelled interests, such as to protect an ongoing law enforcement investigation or for some other reason such as to shield the names of undercover officers or confidential informants, or to protect the privacy of innocent third parties.
The existence of a First Amendment right to access search warrant affidavits, and any corresponding limitation on a trial court's ability to seal such a record is therefore not resolved by the Patterson case and is unclear in Arkansas.
It is clear, however, that there is a common law right to access court records in Arkansas which must be considered before a court enters an order to seal court records. Two Arkansas cases are relevant in this regard, although they did not arise from criminal proceedings. In the 1994 case of Department of HumanServices v. Hardy, supra, at issue was the sealing of a final order in a paternity action. The Arkansas Supreme Court concluded in Hardy that the trial court had no jurisdiction to seal final orders, but that "parts of files may be sealed." Id. at 123. The court stated that "[t]he inherent authority to seal parts of court files is tempered by the requirements that a request for sealing part of a file must be particularized, that there must be some good cause for sealing part of a file, such as a trade secret, and that it should be in effect for only so long as is necessary to protect the specified interest." Id. at 124. The court didn't expressly reference a "common law right" to access court records, or rely on any United States Supreme Court precedent addressing such a right, but noted that:
 One of the basic principles of a democracy is the people have a right to know what is done in their courts. Correlative of this principal [sic] is the vital function of the press to subject the judicial process to extensive public scrutiny and comment. See Arkansas Television Co. v. Tedder, 281 Ark. 152, 662 S.W.2d 174 (1983). . . . In Sheppard v. Maxwell, 384 U.S. 333 (1966), the Supreme Court wrote that when public court business is conducted in private, it becomes impossible to expose corruption, incompetence, inefficiency, prejudice, and favoritism. For this reason traditional Anglo-American jurisprudence distrusts secrecy in judicial proceedings and favors a policy of maximum public access to proceedings and records of judicial tribunals.
Hardy, supra at 123.
Another case from 1994, Arkansas Best Corporation v. GeneralElectric Capital Corporation, 317 Ark. 238, 878 S.W.2d 708
(1994), involved the sealing of a settlement agreement between private parties in a business dispute. The court expounded upon the decision in Hardy by stating that the "pronouncements we made in the Hardy case with respect to the right of access are based on cases from other jurisdictions which had declared and emphasized the common law right of the public to access to court proceedings, and they are relevant to this decision."317 Ark. at 245. The court continued by stating that: "A review of cases from other jurisdictions indicates support for a strong presumption in favor of the right to access. [Citations omitted.] Each of these cases, however, also states that the presumption is not absolute." Id. The Arkansas Supreme Court noted the holding of the United States Supreme Court in Nixon, supra, that the right of access was a matter subject to the trial court's discretion and concluded that "a trial court's discretion to invoke inherent authority denying access to judicial documents must be balanced against the strong presumption in favor of access" and that such discretion "must lie beyond a formidable threshold."317 Ark. at 246. The court was persuaded to adopt the approach taken in a Pennsylvania case (R.W. v. Hampe, M.D., 626 A.2d 1218
(Pa.Super. 1993)) and concluded that "beyond the instances described in the statutes or rules, the `inherent' authority of a trial court to seal court records must be very limited in view of the strong common law right of access."[10] 317 Ark. at 247.
It is clear from a discussion of the criminal case of ArkansasTelevision and the later United State Supreme Court decision inPress-Enterprise, supra, that a qualified First Amendment right of access attaches to pre-trial criminal proceedings. We know from Arkansas Newspapers Inc. v. Patterson that a "general rule" of openness extends to the records of such proceedings in Arkansas. The Patterson case, however, was somewhat unclear as to whether this conclusion was based on the First Amendment or the common law right of access. In addition, the facts inPatterson involved documents in a filed criminal case (after charges had been filed), rather than to a court's involvement in an earlier stage of a law enforcement investigation.
We know from the civil cases discussed above (Hardy andArkansas Best,), that nonetheless, at a minimum, Arkansas recognizes a strong common law right to access court records. It is unclear, again, however, to what extent this right would be extended to search warrant affidavits filed by the court prior to any criminal charges or criminal case being filed. It has often been argued that such records should not be considered "court records" to which the right attaches. I have concluded above that such records are required to be filed with the court after return of the warrant, but this fact has not always been held determinative by the courts in deciding whether such records are "court records" to which a First Amendment or common law right of access attaches. See e.g., Times Mirror Company v. UnitedStates, 873 F.2d 1210, 1214 (9th Cir. 1989) (stating that although warrant materials are required to be filed with the court under Federal Rule of Criminal Procedure 41(g), absent an order to seal, this "general availability" does not undermine the government's claim that there is no history of unrestricted access to warrant materials under the Press-Enterprise II
test). In addition, it has been stated that the court inArkansas Best "failed to either hypothesize specific examples of appropriate sealing situations or to delineate any criteria for a trial judge to consider when faced with a sealing request." Note, To Seal or Not to Seal? That is Still the Question:Arkansas Best Corp. v. General Electric Capital Corp., 49 Ark. L. Rev. 325 (1996). Left unsettled in Arkansas, therefore, is whether search warrant affidavits filed with the court are court records to which either a First Amendment or a common law right of access attaches, and if so, the exact circumstances under which an order to seal may be issued.
Although there is no controlling Arkansas case regarding these issues in connection with search warrant affidavits, the federal courts and the courts of other states have addressed the topic. Our court has shown a willingness to rely on the decisions of sister states in this area. See e.g., Arkansas Best, supra.
In analyzing the applicability of the First Amendment, most courts addressing this search warrant affidavit issue have applied the two-part test laid down by the U.S. Supreme Court inPress-Enterprise II (even though that case involved First Amendment rights to judicial proceedings rather than records).See e.g., Newspapers of New England, Inc. v. Clerk-Magistrate ofthe Ware Division of the District Court, 403 Mass. 628,531 N.E.2d 1261, 1265 (1988) (stating, after noting that none of the U.S. Supreme Court precedents applied a First Amendment right torecords as opposed to proceedings, that in applying thePress-Enterprise II test to documents, "some courts have looked to the proceeding to which the documents relate. . . ."). The cases are not in complete agreement. It has been stated, however, that the "great weight of authority" holds that "pre-indictment search warrant materials have not `historically been open to the press and the general public' [citing the first prong of the test inPress-Enterprise II, see p. 9 supra] and therefore access is not compelled under the First Amendment." In re SealedDocuments, 172 Vt. 152, 155, 772 A.2d 518, 522 (2001). Another court has noted that "[a]side from the Eighth Circuit in [Gunn], federal courts which have considered the issue have concluded that applications for search warrants have not historically been open to the press and public" and that "[o]nly the State of Utah, relying on the reasoning of the Eighth Circuit in [Gunn], has found a tradition of public access regarding warrant applications." State v. Rybin, 262 Neb. 77,628 N.W.2d 272, 277, (2001).
In analyzing the common law right of access, most courts have invoked the U.S. Supreme Court's decision in Nixon v. WarnerCommunications, supra. It has been stated that "[w]ith the exception of Times Mirror, 873 F.2d at 1219 [9th Cir 1989], which declined to recognize any basis for access to pre-indictment search warrants, the . . . decisions generally acknowledge that, under constitutional, statutory, or common law, the public has a presumptive right of access to such materials absent an overriding demonstration of harm to public or private interests."[11] In re Sealed Documents, 772 A.2d at 526, n. 8.
The strong consensus of the relevant court decisions is that search warrant affidavits are judicial records to which a common law right of access attaches, but which may be sealed if the judicial officer specifically finds that the interests favoring closure outweigh the public's right of access.[12]
Federal circuit cases addressing the issue include Gunn,
mentioned earlier (extending a qualified First Amendment right of access to federal search warrant application records, which may be overcome if the party seeking closure shows that sealing the record is necessitated by a compelling governmental interest, and requiring reviewing court to explain why closure is necessary and why less restrictive alternatives are not appropriate, but upholding the lower court's refusal to unseal such records, finding that qualified right was overcome by the compelling governmental interest in protecting the on-going investigation);[13] Times Mirror Company v. UnitedStates, 873 F.2d 1210 (9th Cir. 1989), cert. denied498 U.S. 880 (1990) (declining to find either a First Amendment or common law right to access search warrant materials at the pre-indictment, on-going investigation stage and upholding two district courts' rulings keeping the documents under seal (applying the test laid down in Press Enterprise Co. v. SuperiorCourt, 478 U.S. 1 (1986)), and criticizing the 8th Circuit's decision in Gunn, supra); Baltimore Sun Company v. Goetz,886 F.2d 60 (4th Cir. 1989), cert denied, 498 U.S. 880 (1990) (holding, contrary to the assertion of the government, that search warrant affidavits are judicial records, declining to find a First Amendment right to access them, but finding a common law right of access committed to the sound discretion of the judicial officer and noting that access may be denied where sealing is "essential to preserve higher values and is narrowly tailored to serve that interest"); and In Re Newsday, 895 F.2d 74 (2nd
Cir. 1990), cert. denied 496 U.S. 931 (1990) (concluding, without reaching First Amendment issue, that a common law right of access attaches that must be balanced against any privacy interests, at least at stage where the defendant has reached a plea agreement and trial court's redaction of innocent third parties names from affidavits before release was not an abuse of discretion).
Federal district courts addressing the issue include UnitedStates v. Inzunza, 303 F.Supp.2d 1041 (S.D. Cal. 2004) (finding no First Amendment right, but a common law presumptive right of access to search warrant affidavits, which must be balanced against important competing interests within the sound discretion of the trial court and opening previously sealed affidavits in this "unique" case where investigation was completed with regard to subject of search warrant); United States v. Certain RealProperty Located in Romulus, Wayne County, Michigan,977 F.Supp. 833 (E.D. Mich. 1997) (common law right, not First Amendment right, attaches to search warrant affidavits, but holding that strong presumption in favor of access does not apply to records filed under seal and requiring party seeking disclosure to make specific showing of need for access, burden which it did not meet in this case); In the Matter v. the Search of Office Suites ForWorld Islam Studies, 925 F.Supp. 738 (M.D. Fla. 1996) (law establishes no clear First Amendment right to access search warrant affidavits, but common law right is well established and can be overcome by compelling interests in closure narrowly tailored to serve those interests, and was overcome in this case and redaction was not feasible); In re the Macon TelegraphPublishing Company, 900 F.Supp. 489 (M.D. Ga. 1995) (finding no First Amendment right of access to search warrant affidavits, but stating that the common law right "exists in all instances" and balancing the right against applicable privacy interest to shield records in this case); and In the Matter of Search of FlowerAviation of Kansas, Inc., 789 F.Supp. 366 (D. Kan. 1992) (finding no First Amendment right of access but following 4th
Circuit's reasoning in Goetz to find a common law right which may be overcome to preserve higher values and where closure is narrowly tailored to serve those values, and holding test was met in this case and redaction was not feasible).
States cases addressing the issue include Rybin, supra
(subject of search warrant did not possess First Amendment right to unseal search warrant affidavit, and did not assert common law right early enough to preserve it for review); In the Matter of2 Sealed Search Warrants, 710 A.2d 202 (Del. 1997) (search warrant and supporting documentation are judicial records, subject to common law presumption of openness, declining to find a First Amendment right, and holding that the strong presumption can be overcome only when the party seeking closure demonstrates that the factors opposing access, such as risk of harm to third parties, privacy concerns of individuals who may or may not be suspects, or the integrity of the ongoing investigation, outweigh those favoring it, and finding secrecy justified in this case);State v. Cummings, 199 Wis.2d 721, 546 N.W.2d 406 (1996) (adopting the 4th Circuit's approach in Goetz, declining to find a First Amendment right of access, but finding a common law right of access which must be balanced against the State's reasons for desiring secrecy, a balance committed to the sound discretion of trial court, which must make specific enough findings of fact to allow appellate review and upholding secrecy in this case); Archuleta, supra (finding a First Amendment right, a right under the Utah Constitution, and a common law right to access pre-trial documents, including search warrant affidavits, but holding that each right was outweighed in this case by the defendant's Sixth Amendment right to a fair trial);PG Publishing Company v. Commonwealth, 532 Pa. 1, 614 A.2d 1106
(1992) (search warrant affidavits are judicial records because they are filed with the court and are used to make judicial determination to issue warrant, and once the warrant is executed, are open to public inspection under the common law right of access unless sealed pursuant to finding that presumption of access is outweighed by circumstances warranting closure, and upholding remand because trial judge should have conducted an incamera review of the documents and articulated his reasons for decision not to seal); Newspapers of New England, Inc. v.Clerk-Magistrate, 403 Mass. 628, 531 N.E.2d 1261 (1988) (on filing with the court, a search warrant affidavit is a public document both by statute and under the common law right of access, declining to find a First Amendment right of access and disagreeing with the 8th Circuit decision in Gunn, but finding that defendant's Sixth Amendment right to a fair trial outweighed the common law right of access and justified "impoundment" of affidavit); and Seattle Times Company v.Eberharter, 105 Wash.2d 144, 713 P.2d 710 (1986) (common law right of access, not First Amendment, governs access to search warrant affidavits in unfiled criminal case and, presumptively, such records must be filed as public records, and the presumption may be overcome, as in this case, if the party seeking closure can persuade the judge that "a substantial threat exists to the interests of effective law enforcement, or individual privacy and safety," and requiring judge to document his determination for appellate review).[14]
Many of the cases found the test for sealing the records met under the circumstances before them, but the courts have not always agreed or clearly defined the appropriate balancing test to apply. Some, even under the common law right to access, have required a finding that sealing of the records was necessary to "preserve higher values" and that the order to seal be "narrowly tailored to serve those interests." See Goetz, supra (4th
Cir.), and In the Matter of the Search of the Flower Aviation ofKansas, Inc., supra. Others have not been specific, holding only that the records could be sealed if the factors opposing access outweigh the factors favoring it (In the Matter of 2 SealedSearch Warrants, supra); or simply holding that a balancing of interests must occur, committed to the sound discretion of the trial judge. See e.g., State v. Cummings, supra; P.G.Publishing, supra; and Seattle Times Company v. Eberharter,supra. Again, the most relevant law in Arkansas is the ArkansasBest case, supra, which discussed the "strong presumption" in favor of access and stated that a trial judge's discretion must lie beyond a "formidable threshold." 317 Ark. at 246.
In my opinion, after a review of all the relevant case law and in response to your third question (concerning what provisions might be available to delay public access to such documents), search warrant affidavit records, after the execution and return of the warrant and filing by the judicial officer, are presumptively open to the public absent the entry of an order to seal the records. The exact nature of the public's rights to such records and the extent of a court's authority to seal them are not well-defined in Arkansas. Although the FOIA (and presumably the exemption contained therein for certain law enforcement investigation records), applies on its face to court records, some uncertainty exists as to the FOIA's effect in light of the separation of powers doctrine. In addition, other avenues of access must be considered. With regard to a First Amendment right of access, in my opinion, if the Arkansas Supreme Court were faced with the question, it would apply the two-partPress-Enterprise II test (as other courts have done), to determine whether a First Amendment right of access attaches to search warrant affidavits. Although the Eighth Circuit Court of Appeals has held that the First Amendment right of access attaches to such records, its decision is a distinct minority position among the federal and state cases addressing the issue. I cannot confidently opine that the Arkansas Supreme Court would adopt the Eighth Circuit's reasoning. The Arkansas Supreme Court has already found a strong common law right to access judicial records, however, which in my opinion would be viewed as attaching to search warrant affidavits filed with a court. Attempts to forestall public access to such records, must, as the Arkansas Supreme Court has noted, therefore "lie beyond a formidable threshold." 317 Ark. at 246. In my opinion our court would look to the decisions of other states and federal case law addressing the issue with regard to search warrant affidavits and hold that a court may not seal such records unless necessary to preserve weightier interests. The exact balancing test to be applied is undefined in Arkansas and must therefore be left to judicial determination.
In response to your third question, therefore, the only "provisions" that would "delay or seal the affidavit from being made accessible" until the completion of the pending investigation is an order to seal the records entered as discussed above.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] See also in this regard, A.C.A. § 16-82-201, which also addresses the issuance of search warrants upon oral testimony.
[2] Subsection (e) of Rule 13.1 provides that: "The proceedings upon application for a search warrant shall be conducted with such secrecy as the issuing judicial officer deems appropriate to the circumstances." This reference to "the proceedings upon application" being "conducted with . . . secrecy," appears to refer to the proceedings conducted in connection with the application prior to the time the warrant is executed.
[3] Your questions appear to focus on affidavits supporting executed search warrants. I express no opinion, therefore, on whether affidavits supporting unexecuted search warrants must be file-marked.
[4] The three questions you pose, when read together, appear to assume that "file marking" is a necessary prerequisite to records being deemed court records, or that such marking is necessarily determinative of the records' public status. This is not always the case, however. For example, the court in Commonwealth v.Fenstermaker, 515 Pa. 501, 509, 530 A.2d 414, 418 (1987) noted that in determining whether arrest warrant affidavits deposited with magistrates are to be deemed public, several factors must be taken into account, and the fact of filing "enhanced" the public character of such records. The court stated further that "documents upon which a magistrate bases a decision to issue an arrest warrant are clearly judicial in character, for the decision to issue a warrant is itself a judicial one reflecting a determination that the affidavit and the information contained therein provide a sufficient basis upon which to justify an arrest." Id. See also, Cowles Publishing Company v. Murphy,96 Wash. 2d 584, 637 P.2d 966 (1981) (issue of access to search warrant affidavits should be determined by the role the documents play in our system of government and the legal process, not by what officials handle them).
[5] For additional discussion of the interplay between the FOIA and a court's authority to seal records, see City ofFayetteville v. Edmark, 304 Ark. 179, 801 S.W.2d 275 (1990) (although a court in an FOIA action must give credit to protection orders previously issued by other courts, a court's inherent authority to issue protective orders does not extend so far as to allow a court presiding over an FOIA case to exempt documents not specifically exempted by the FOIA itself).
[6] Of course, the General Assembly, through the passage of statutes such as those contained in the FOIA, has the authority to alter common law principles. See Books-A-Million, Inc. v.Arkansas Painting and Specialties Co., 340 Ark. 467,10 S.W.3d 857 (2000) and Hartford Insurance Co. of Midwest v. Mullinax,336 Ark. 335, 984 S.W.2d 812 (1999). A court addressing such an issue will not conclude that the General Assembly has done so, however, unless the statute makes plain that such a change in the common law was intended. Id. It should be noted in this regard, that a Task Force of the Arkansas Supreme Court is currently drafting a proposed Administrative Order "with the goal of a policy on public access to court records being provided to the Supreme Court for its review and adoption." See
www.courts.state.ar.us "Court Administration," "Task Force on Public Access and Privacy." This proposed Administrative Order, if adopted, may therefore have some impact on the common law right of access in Arkansas.
[7] I do not address in this opinion the potential Fourth Amendment right of a subject of the search warrant to access the records in question. On this issue, see In re Search WarrantsIssued on April 26, 2004, 353 F. Supp. 2d 584 (N.D. Md. 2004);In re Search of Up North Plastics, 940 F. Supp. 229 (D. Minn. 1996); and Sloan v. Sprouse, 1998 Okla. Crim. 56, 968 P.2d 1254
(Okla. 1998).
[8] The Vermont Supreme Court found it unnecessary to address this argument, because a separate statute governing court records applied, but noted previous case law to the effect that "it is doubtful that the public records law applies at all to judicial records." 772 A.2d at 524, n. 3, citing Herald Ass'n v. JudicialConduct Board, 149 Vt. 233, 544 A.2d 596 (1988).
[9] The Press-Enterprise case, and its two-part test, had not been decided at the time of the decision in ArkansasTelevision.
[10] It appears that a trial court asked to seal a search warrant affidavit in Arkansas would have to rely on its "inherent" authority referred to above. There does not appear to be any statute or court rule expressly granting the authority to seal such records. As noted in footnote 1, supra, Arkansas Rule of Criminal Procedure 13.1(e), allowing the "proceedings upon application for a search warrant" to be "conducted" with "such secrecy as the issuing judicial officer deems appropriate to the circumstances" appears to refer to the "proceedings conducted" in connection with the application prior to the time the warrant is executed and returned. Rule 19.4 of the Rules of Criminal Procedure provides for protective orders in the context of criminal discovery, stating that: "[u]pon a showing of cause, the court may at any time order that specified disclosures be restricted or deferred, or make such other order as is appropriate, provided that all material and information to which a party is entitled must be disclosed in time to permit his counsel to make beneficial use thereof." This Rule, however, does not appear to apply outside the discovery context. Rule 26(c) of the Rules of Civil Procedure provides for protective orders in connection with discovery in civil cases, but it would also not appear to apply in the context of your question.
[11] For decisions based on statutory provisions that prohibit sealing of the records, see Houston Chronicle Pub. Co. v.Edwards, 956 S.W.2d 813 (Tex.App., 1997) (trial court had no inherent power to seal public document in light of the explicit language of Texas Code of Crim. Proc., art. 18.01(b), and orders sealing search warrant and search warrant affidavit were in error and trial court had only one ministerial act of releasing the search warrant affidavit); and Houston Chronicle Pub. Co. v.Woods, 949 S.W.2d 492 (Tex.App., 1997) (statutory provision that sworn affidavit submitted in support of search warrant is public information if warrant is executed means what it says without exception, and once requested, the trial court's refusal to release the affidavits and sealing of records was error).
[12] Procedural and ancillary matters surrounding the action of a trial court in this regard, including the timing of any motion to seal the records, notice or docketing of requests or orders to seal records, possible redaction of the records, and any required written findings on entering an order to seal are generally beyond the scope of your question and this opinion. Such matters are appropriate for judicial resolution.
[13] See also, Certain Interested Individuals, John Does I-Vv. Pulitzer Publishing Co., 895 F.2d 460 (8th Cir. 1990) ("Gunn II"), wherein the Eighth Circuit required the documents to remain confidential after the law enforcement objectives had been achieved to protect the subject's "conversational privacy rights" under the Fourth Amendment pertaining to wiretapped conversations reflected in search warrant materials, at least where no indictment was issued. See also Johnson and Gardner, ACCESS TO SEARCH WARRANT MATERIALS, BALANCING COMPETING INTERESTS PRE-INDICTMENT, 25 U.A.L.R. Rev. 771 (Summer 2003).
[14] Other state cases turn upon particular state constitutional provisions or statutes. See e.g., Petition ofState of New Hampshire (Bowman Search Warrants), 146 N.H. 621,781 A.2d 988 (2001) (New Hampshire constitutional provision creates right of access to court records and statute provides that they are public unless sealed in light of "some overriding consideration or special circumstance," but holding that in most pre-indictment criminal investigations, the existence of an investigation itself will provide the consideration or circumstance that would justify preventing public access); andIn re Sealed Documents, 172 Vt. 152, 772 A.2d 518 (2001) (Vermont statute affords statutory right to access search warrant affidavits absent superseding legal requirement of confidentiality, but common law principles grant courts inherent authority to deny access and adopting the common law balancing test utilized in other jurisdictions).